Alma S. Fox, for Herself and for Others Similarly Situated, Plaintiff, *v.* C. Delores Tucker, Secretary of the Commonwealth; Democratic State Committee of Pennsylvania; and Dennis Thiemann, Defendants.

Argued May 7, 1974, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Paul D. Boas,* with him *Samuel A. Vitaro, Daniel
M. Berger* and *Martha E. Richards,* for plaintiffs.

*Norman J. Watkins,* Deputy Attorney General, with
him *Lawrence Silver,* Deputy Attorney General, and
*Israel Packel,* Attorney General, for defendant, Tucker.

*Robert J. Demer,* with him *Thomas R. Balaban* and
*Shaffer, Calkins & Balaban,* for defendants, Committee
and Thiemann.

OPINION BY JUDGE ROGERS, June 12, 1974:

The plaintiffs in this suit in equity are individuals,
allegedly members of traditionally underrepresented

groups, and organizations committed to the cause of such groups. The defendants are Dennis Thiemann, Chairman of the Democratic State Committee of Pennsylvania, C. Delores Tucker, Secretary of the Commonwealth of Pennsylvania and the person charged with the duty of overseeing the conduct of elections in Pennsylvania and the Pennsylvania Democratic State Committee. The defendants have filed a number of preliminary objections to the plaintiff's amended complaint. We need consider only one of those objections—that the amended complaint does not state a cause upon which the plaintiffs may have relief.

The plaintiffs aver that the Democratic National Committee by a document entitled "Preliminary Call for the 1974 Conference on Democratic Party Organization and Policy" scheduled a National Party Conference of the Democratic Party to be held December 6, 7 and 8, 1974; that the Preliminary Call provided for the election of 96 delegates from Pennsylvania and required that each state party should develop a plan of affirmative action to ensure the participation in such election of all Democratic voters on the basis of sex, age, race and social and economic status; that the Democratic State Committee of Pennsylvania prepared an affirmative action plan but did not carry it out in the following respects: by failing to provide adequate special releases and interviews for news media, by failing to direct publicity to minority media and publications of women's and other underrepresented groups, by failing to issue special releases to predominantly minority and student newspapers, by failing to monitor coverage in the media, by failing to use paid advertising, by failing to adequately publicize the delegate selection process in the state, and by failing to take special efforts to encourage participation and representation by traditionally underrepresented groups in the delegate selection process; that as the result of the State Committee's failures, the

Pennsylvania delegates will not be elected in accordance with the affirmative action plan and that traditionally underrepresented groups, including women, blacks, ethnic Americans, youth, senior citizens and poor people, did not learn about the National Party Conference in time to obtain and file petitions to become candidates for delegate at the May 21, 1974 primary election.

By their complaint filed April 19, 1974 and amended complaint filed April 26, 1974, the plaintiffs sought an order directing the defendant C. Delores Tucker to remove the contests for delegates to the Conference from the May 21, 1974 Democratic primary ballot. After hearing conducted May 2, 1974, we denied the plaintiffs' motion for preliminary injunction on the ground that the election on May 21, 1974 of others than the individual plaintiffs would not immediately and irreparably harm the plaintiffs or those they represent because ample time remained and reasonable opportunities existed in and by which the cause could be pursued and, if successful, relief obtained. One such opportunity was, of course, this lawsuit. We heard argument by special listing of the defendants' preliminary objections and now dispose of them, as it happens, adversely to the plaintiff.

The Preliminary Call for the Conference is attached to the amended complaint. It contains the following provision:

"III. CHALLENGES TO DELEGATES OR STATE DELEGATIONS

"Notice is hereby given that the Democratic National Committee has adopted the following resolution concerning procedures for challenging delegates selected for the 1974 Conference on Democratic Party Organization and Policy.

"BE IT RESOLVED by the Democratic National Committee that:

"(1) Challenges to delegations shall be made to the Compliance Committee. Such challenges must be submitted in writing not more than 10 days after the challenged delegates are selected in a form and manner to be determined by the Compliance Committee.

"(2) The Compliance Committee shall upon petition of interested parties, or where it deems appropriate, appoint a fact-finding committee of not less than 5 Democratic National Committee members. This committee will investigate any challenges to a delegation and report their findings of fact to the Compliance Committee.

"(3) The Compliance Committee after study of any fact-finding report will resolve the challenges to all delegations, taking whatever action they deem appropriate under the circumstances.

"(4) All decisions of the Compliance Committee shall be final.

"(5) The Rules of Procedures of the Compliance Committee, shall be submitted for approval to the Democratic National Committee and shall include adequate provision for notice and hearings."

Hence, the plaintiffs may challenge the delegation elected at the May 21, 1974 primary election before the Compliance Committee on the precise ground asserted here—that the State Committee failed to comply with the affirmative action plan. The plaintiffs ask us, therefore, to preempt party machinery provided for deciding the issue they raise.[1] We have concluded that the means provided by the National Committee must be employed before recourse may be had to the judiciary; or, otherwise stated, that we should not and may not interfere in the determinations of an association,

---

[1] The defendant Thiemann, called by the plaintiffs to testify as on cross-examination at the hearing on the motion for preliminary injunction, described in some detail actions taken by the State Committee in intended compliance with the plan.

including this political party, until the available internal remedies have been exhausted. *See Falsetti v. Local Union No. 2026,* 400 Pa. 145, 161 A. 2d 882 (1960). In *O'Brien v. Brown,* 409 U.S. 1, 4 (1972), the Supreme Court opinion includes the following wholly pertinent statement: "It has been understood since our national political parties first came into being as voluntary associations of individuals that the convention itself is the proper forum for determining intra-party disputes as to which delegates should be seated."[2]

The plaintiffs recognize the rule requiring exhaustion of internal remedies but contend that the procedures provided by the National Committee are not adequate and complete. We simply disagree. The plaintiffs concede that the delegates elected in the May primary could be unseated by the Compliance Committee and that in such event that the delegation might be "restructured." They complain, however, that the National Committee could not order another election. It could, however, provide that a new delegation be chosen in such fashion and this or another court of competent jurisdiction could, in such an event and upon proper showing, order just such an election. We cannot assume, as the plaintiffs suggest, that the National Committee or its Compliance Committee will be so inefficient as to delay determination of challenges beyond the time when corrective action might be taken.

---

[2] It is recognized that the Supreme Court in *O'Brien* refused under the circumstances there present and the time pressures surrounding them to determine the merits of that controversy over the seating of delegates to the Democratic National Convention. It did, however, stay judgments of the Court of Appeals which granted relief "[i]n the light of the availability of the convention as a forum . . . [where] the complaining parties might obtain the relief they have sought from the federal courts, the lack of precedent to support the extraordinary relief granted by the Court of Appeals, and the large public interest in allowing the political processes to function free from judicial supervision. . . ." 409 U.S. at 5.

We have concluded, therefore, that there exists in the rules for the Conference a sufficient internal remedy which, under established law and sound regard for the political process, we may not replace.

The plaintiffs further contend that it is our duty to enforce Section 808.1 of the Pennsylvania Election Code, Act of June 3, 1937, P. L. 1333, added December 22, 1971, P. L. 613, §6, 25 P.S. §2838.1, declaring that "[d]elegates to a National convention of a political party shall be apportioned, selected or elected in such manner as the rules of the party may provide." We must, they argue, do so by adjudicating their complaint that the State Committee violated the rules of the National committee by not adequately implementing the affirmative action plan. This is a curious argument and specious; since to do as plaintiffs ask, we must necessarily disregard another rule of the party specifically designed for determination of the very issue presented.

It is not necessary for us to discuss or decide the merits of the defendants' other preliminary objections or the plaintiffs' arguments in opposition thereto, including the interesting issue of justiciability centering around the case of *Bentman v. Seventh Ward Democratic Executive Committee,* 421 Pa. 188, 218 A. 2d 261 (1966).

## ORDER

AND NOW, this 12th day of June, 1974, the defendants' preliminary objections that the complaint fails to state a cause of action by reason of the absence of an averment that the plaintiffs have exhausted their remedies provided by the rules of the Democratic National Committee are sustained; and the said amended complaint is dismissed.