405 F.Supp. 998 (1975)
Audrey McMENAMIN, Plaintiff,
v.
The PHILADELPHIA COUNTY DEMOCRATIC EXECUTIVE COMMITTEE OF PHILADELPHIA, and Herbert McGlinchey, Defendants.
Civ. A. No. 74-2346.
United States District Court, E. D. Pennsylvania.
October 30, 1975.
Bernard Chanin, Philadelphia, Pa., for plaintiff.
Larrick B. Stapleton, Isadore A. Shrager, Philadelphia, Pa., for defendants.

OPINION
HIGGINBOTHAM, District Judge.
This civil rights action arises out of a contested election for the post of ward leader of the Democratic party in the 42nd Ward of the city and county of Philadelphia. The plaintiff, Audrey McMenamin, alleges that defendants have deprived her of (1) associational rights secured to her by the First and Fourteenth Amendments, and (2) the equal protection of the laws under the Fourteenth Amendment. More specifically, she charges that defendant Philadelphia County Democratic Executive Committee ("County Committee") intentionally and purposefully discriminated against her because of her political beliefs by seating and recognizing defendant Herbert McGlinchey as ward leader of the 42nd Ward and by refusing to seat and recognize her as ward leader of the same ward. She seeks compensatory and punitive damages, counsel fees, and an order from this court requiring defendant *999 County Committee to, inter alia, hold a new election for the post of ward leader. The defendants have moved this court, pursuant to Fed.R.Civ.P. 12(b), to dismiss the complaint on a variety of grounds.
From the beginning of this lawsuit, I have felt that the dispute could be settled amicably. To that end, I held several conferences with counsel for both sides, and suggested that the fairest resolution of the controversy would be the holding of a new election for ward leader. The defendants declined to accept that suggestion and, accordingly, I am compelled to rule on the merits of their motions to dismiss.
In this case it would be an understatement to suggest that there is substantial merit in the major arguments each side presents. Yet, in the final analysis the opposing arguments are cut from very different fabric. In behalf of the plaintiff there is woven the proposition that an adjudication involving voting rights of people should be based on concepts designed to assure fair play, and therefore if this thread of morality is recognized, and if Herbert McGlinchey did what the pleadings charge, then any system of pure equity would not sanction such irreponsible antics. While not responding to plaintiff's moral theme, defendants press the authority of those past precedents which state that federal courts as institutions of limited jurisdiction should not be permitted to interfere with the internal management of a political party regardless of the unstatesmanlike actions of politicians within that party. In this delicate balancing act I am compelled to find that the defendant's arguments relying on past precedent must prevail, even if Mr. McGlinchey's conduct was as outrageous as depicted in the plaintiff's complaint. Thus, for the reasons noted hereinafter, defendant's motion to dismiss will be granted and plaintiff's complaint will be dismissed with prejudice.

Factual Allegations
In their briefs, defendants deny the substance of plaintiff's claims. In fact, defendants go so far as to describe the occasion of plaintiff's purported election as ward leader as "a rump ward meeting [plaintiff] conducted on a public sidewalk, in the midst of an incipient riot." McGlinchey Memorandum, Doc. # 6, at 16.[1] Nevertheless, the following facts are alleged in the complaint, and must be taken as true for the purposes of defendants' motions to dismiss:
The plaintiff is a duly registered Democratic voter residing in the 42nd Ward of the city and county of Philadelphia. Defendant Philadelphia County Democratic Executive Committee is the official county committee of the Democratic party for the city and county of Philadelphia. It exists pursuant to § 807 of the Pennsylvania Election Code, 25 P.S. § 2837, and consists of one county committeeman hereinafter and commonly referred to as "ward leader" from each of Philadelphia's 69 wards, and a chairman and a treasurer, neither of whom need be ward leaders themselves. Defendant Herbert J. McGlinchey was, prior to the events in issue here, the incumbent ward leader of the 42nd Ward. His term of office expired on Monday, June 10, 1974. The party's rules authorized him to preside at an organizational meeting for a new ward committee of the 42nd Ward, and required that said meeting be held on June 10, 1974.
On that date, at approximately 7:30 P.M., plaintiff arrived at the 42nd Ward Democratic Club to attend the organizational meeting. The party's rules designated the club as the site for the organizational meeting, and defendant McGlinchey *1000 so designated it in a written notice circulated prior to the meeting. Certain unknown persons, who were acting in concert with defendant McGlinchey, prevented plaintiff and other duly qualified participants in the organizational meeting from entering the meeting place. After the meeting's scheduled starting time had passed and after plaintiff and said duly qualified participants had failed to gain access to the meeting place by peaceful means, a majority of the ward's committeemen held the organizational meeting on the front steps of the building in which the designated meeting place was located. During that meeting, plaintiff was elected ward leader, receiving the votes of 26 of the 49 committeemen eligible to vote.
Defendant McGlinchey had ascertained prior to the organizational meeting that he would not be re-elected as ward leader. He determined to prevent the meeting from proceeding and to deny plaintiff and the majority of the 42nd Ward's committeemen the chance to conduct a free, fair and lawful election. To that end, he conspired with certain unknown persons to bar plaintiff and her supporters from the designated meeting place. He also changed the location of the meeting to a bus, which had been hired for this purpose, and directed it to a destination known only to him and his supporters, where he conducted a rump organizational meeting in order to secure his re-election as ward leader. At this latter meeting, defendant McGlinchey received the votes of 13 of the 49 committeemen eligible to participate in the organizational meeting.
On June 11, 1974, plaintiff filed a certificate of election with the executive secretary of the County Committee, certifying her as ward leader of the 42nd Ward. Defendant McGlinchey filed a similar certificate, certifying him as ward leader of the same ward.
On June 14, 1974, plaintiff filed with defendant County Committee a petition contesting the certificate of election presented by defendant McGlinchey.
Pursuant to the party's rules, defendant County Committee appointed a Contest Committee, composed of seven ward leaders selected by the County Committee, to conduct a hearing on plaintiff's petition. At that hearing, both plaintiff and defendant McGlinchey presented evidence and argument. After the hearing, defendant County Committee rendered a decision recognizing defendant McGlinchey as ward leader of the 42nd Ward.
Defendant County Committee performs certain specific functions pursuant to state statute, principally the filling of vacancies in party nominations and the nominating of candidates for special elections. See §§ 630 and 979 of the Pennsylvania Election Code, 25 P.S. §§ 2780 and 2939. Pursuant to the same statutes, the ward leader of each ward in Philadelphia, including the 42nd Ward, performs certain public functions, both individually and as a member of the County Committee. Expenditures directly related to the election of ward committeemen constituted a substantial portion of the public funds expended by the City of Philadelphia on the primary election of May 20, 1974.

LEGAL DISCUSSION
At the outset, it is important to state clearly what this case is not about. It does not involve claims of racial discrimination in primary or general elections. See, e. g., Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); Nixon v. Condon, 286 U.S. 73, 52 S.Ct. 484, 76 L.Ed. 984 (1932); Nixon v. Herndon, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759 (1926), and Rice v. Elmore, 165 F.2d 387 (4th Cir. 1947), cert. denied, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948); see O'Brien v. Brown, 409 U.S. 1, 4 n.1, 92 S.Ct. 2718, 34 L.Ed.2d 1 (1972). Nor does it involve the kind of geographical discrimination in the electoral process that the Supreme Court has, on numerous occasions, found unconstitutionally impermissible. See, e. g., Reynolds v. Sims, 377 U.S. 533, 566, 84 S.Ct. 1362, 1384, 12 L.Ed.2d 506 *1001 (1964); Gray v. Sanders, 372 U.S. 368, 381, 83 S.Ct. 801, 809, 9 L.Ed.2d 821 (1963); cf. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Thus, to the extent that plaintiff relies on these cases to justify the exercise of the federal judicial power in her case, her reliance is misplaced. There are no claims of racial or geographical discrimination in this case. According to plaintiff, "the issue is whether the procedures used by defendants in certifying defendant McGlinchey as Ward Chairman and cloaking him with office comported with the applicable constitutional requirements." Plaintiff's Memorandum, Doc. # 8, at 1.
In recent years, the federal courts have been less reluctant than before to intervene in disputes that may be broadly characterized as "political."[2] Nevertheless, on the basis of the authorities cited by the parties and those uncovered in my own research, the instant action appears to be sui generis. It does not involve the use of state office to influence the result of primary elections. See, e. g., Weisberg v. Powell, 417 F.2d 388 (7th Cir. 1969); White v. Snear, 313 F.Supp. 1100 (E.D.Pa.1970). Nor does plaintiff allege that party officials have perpetrated a fraud on voters in a primary election. See Smith v. Cherry, 489 F.2d 1098 (7th Cir. 1973). She does not claim that elected officials have used the patronage at their disposal to secure the election of candidates they favor. See Shakman v. Democratic Organization of Cook County, 435 F.2d 267 (7th Cir. 1970). The suit does not involve governmental administration of the process of nominating candidates for public office. See Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1970). Nor does she challenge party procedures for the selection of delegates to intra-party conferences, see Fox v. Tucker, 13 Pa.Cmwlth. 497, 320 A.2d 919 (1974), or to national presidential nominating conventions. See, e. g., Republican State Central Committee of Arizona v. Ripon Society Inc., 409 U.S. 1222, 93 S.Ct. 1475 (1972); Bode v. National Democratic Party, 146 U.S.App.D.C. 373, 452 F.2d 1302 (1971); Georgia v. National Democratic Party, 145 U.S.App.D.C. 102, 447 F.2d 1271 (1971); Irish v. Democratic-Farmer-Labor Party of Minnesota, 399 F.2d 119 (8th Cir.), aff'g, 287 F.Supp. 794 (D.Minn.1968); Dahl v. Republican State Committee, 319 F.Supp. 682 (W.D. Wash.1970), and Maxey v. Washington State Democratic Committee, 319 F.Supp. 673 (W.D.Wash.1970). Finally, she does not object to the manner in which a political party's county committeepersons are chosen. See, e. g., Seergy v. Kings County Republican County Committee, 459 F.2d 308 (2d Cir. 1972). While these cases do shed some light on the legal issues raised by defendants' motions to dismiss,[3] they nevertheless demonstrate that no federal court has, to my knowledge, adjudicated the precise kind of claims advanced by plaintiff in the instant case.
A fortiori, the Supreme Court has yet to speak definitively on several of the issues raised by plaintiff's suit. Nevertheless, in two relatively recent cases, it has exhibited considerable reluctance to intervene in the internal affairs of political parties. In O'Brien v. Brown, 409 U.S. 1, 92 S.Ct. 2718, 34 L.Ed.2d 1 (1972), where a court of appeals had ordered the seating of certain delegates to the 1972 Democratic National Convention in contravention of a ruling of the convention's Credentials Committee, the Court noted that the case involved highly important questions of justiciability, state action, the reach of the Due Process Clause, and vital rights of association under the constitution. While the Court was unwilling to reach the merits of the case without full briefing and argument, it nevertheless entertained "grave doubts" about *1002 the intervention of the court of appeals in an area traditionally left to internal party processes. 409 U.S. at 5, 92 S.Ct. at 2720. Accordingly, in light of the availability of the convention as a forum, the lack of precedent for the action of the court of appeals, and "the large public interest in allowing political processes to function free from judicial supervision," it stayed the judgment of the court of appeals. Id.
In a more recent case involving many of the same facts, Cousins v. Wigoda, 419 U.S. 477, 95 S.Ct. 541, 42 L.Ed.2d 595 (1975), the Court reversed an Illinois appellate court which had affirmed an injunction prohibiting certain persons from acting as delegates at the 1972 Democratic National Convention. The lower Illinois court had justified the injunction on the basis of Illinois's interest in protecting the integrity of votes cast in a primary election, but that rationale did not persuade the Supreme Court. Stating that the convention served "the pervasive national interest," which is "greater than any interest of an individual State," it held that the convention itself was the proper forum for settling intra-party disputes over delegate seating. 419 U.S. at 490, 95 S.Ct. at 549.
It would be difficult to argue that Cousins was an unqualified affirmance of O'Brien. See the opinion of Mr. Justice Rehnquist, concurring in the Cousins result. 419 U.S. at 492-497, 95 S.Ct. at 550-52. Nevertheless, it is clear that in both cases, when lower courts presumed to intervene in the internal processes of a political party, the Supreme Court, whether by granting a stay or by outright reversal, refused to permit such intervention. While neither O'Brien nor Cousins is dispositive of the issues presented by the instant case, both counsel restraint when courts are tempted to interject themselves into intra-party political disputes.
The most instructive case in this Circuit is Lynch v. Torquato, 343 F.2d 370 (3d Cir. 1965). In Lynch, the plaintiffs had mounted an equal protection challenge to the method of selecting the Democratic party chairman in a particular county. Relying on Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963), they charged that the county's precincts, each of which was represented by two committeepersons who functioned as electors for the post of county chairman, contained widely disparate numbers of Democrats, and that voters in the precincts containing the largest numbers of Democrats were therefore underrepresented in the selection of the county chairman. The Court of Appeals rejected plaintiffs' contention, stating that "the citizen's constitutional right to equality as an elector" did not apply "in the internal management of a political party." 343 F.2d at 372. Moreover, the court said, "the normal role of party leaders in conducting internal affairs of their party, other than primary or general elections, does not make their party offices governmental offices or the filling of these offices state action which must satisfy the requirements of Gray v. Sanders." Id.
In Lynch, the Court repeatedly emphasized the differences between "elected representatives in the conduct of government" and elected representatives in the "internal management of a political party." 343 F.2d at 370-372 (emphasis added). There was no doubt in the Court's analysis that the "citizen's constitutional right to equality as an elector" deserves protection in every aspect of the direct election of public officials in the conduct of government. But in this case, regardless of whether Mrs. McMenamin or Mr. McGlinchey should be declared Democratic leader of the 42nd Ward, neither would be filling the role categorized by the court as an "elected representative in the conduct of government." In Lynch, the court held that there is no federal, Fourteenth Amendment constitutional right involved in the process by which the county chairman of a political party is chosen. The county chairman's post is obviously a higher titular position in the political hierarchy than is that of a ward leader. It is both more powerful and more prestigious. *1003 Thus, if there is no constitutional right attached to the process of choosing the more powerful political party officer, no such right is attached to the process of choosing a less powerful officer like a ward leader. Accordingly, insofar as plaintiff claims equal protection under 42 U.S.C. §§ 1983 and 1985(3), her suit must be dismissed for failure to state a claim upon which relief may be granted.
In contrast to Lynch, at least on philosophical grounds, the Pennsylvania Supreme Court in Bentman v. Seventh Ward Democratic Executive Committee, 421 Pa. 188, 218 A.2d 261 (1965), seemed less reluctant to "intervene" in the internal management of a political party. Bentman can perhaps be distinguished. There, the Seventh Ward Executive Committee expelled committeemen who had actually been elected by the voters in their precincts. While here no individuals have had taken away from them their title as committeemen, one must nevertheless ask whether such a distinction is one of form or substance. In Bentman, a manipulative ward leader stripped the title of committeemen from citizens who were actually elected to office by a majority of their constituents. Here, while the committeemen keep their titles, it is alleged that a manipulative ward leader denied them the option of voting in a ward election. Probably either type of manipulative conduct is just as destructive of any concept of enlightened representative government. If I were bound to anticipate how the Pennsylvania Supreme Court would construe this issue as a matter of Federal constitutional law, I would be inclined to hold that under the rationale suggested in Bentman, plaintiff's complaint should not be dismissed. However, I am bound by the ruling of the Court of Appeals of this Circuit and, because of Lynch, I cannot justify this court's intervention in the election of a ward leader when trial judges have been advised that a federal court should not even intervene in the election of a party's county chairman.
In her claim under § 1983, plaintiff relies not only on rights secured to her by the Equal Protection Clause of the Fourteenth Amendment, but also on rights guaranteed her by the First Amendment and made applicable to the states by the Fourteenth Amendment. Plaintiff's Complaint, Doc. # 1, ¶ 17. While plaintiff does not specifically name these rights, one can safely assume from her reliance on Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), that the rights in question cluster around the concept of "freedom of association." The issue, however, is not whether plaintiff possesses these rights. She unquestionably does. Williams v. Rhodes, supra at 30-31, 89 S.Ct. at 10; see also Weisberg v. Powell, 417 F.2d 388 (7th Cir. 1969), and Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944) (dictum). The issue, rather, is whether her associational rights have been abridged by "state action" within the meaning of the Fourteenth Amendment or action "under color of" state law within the meaning of § 1983.[4] Once again, Lynch v. Torquato, supra, is dispositive of the issue: "the normal role of party leaders in conducting internal affairs of their party, other than primary or general elections, does not make their party offices governmental offices or the filling of these offices state action." 343 F.2d at 372. The instant case involves not a primary or a general election, but rather the internal affairs of a political party, specifically the filling of a party office. Under Lynch, supra, the filling of such an office is not state action or action under color of state law. Accordingly, because plaintiff's associational rights were not abridged or impaired by state action  as opposed to the private action of party leaders conducting the internal affairs of their party  *1004 she has again failed to state a claim under § 1983 upon which relief may be granted. Her suit must therefore be dismissed.

CONCLUSION
Lest there be any confusion on the point, this opinion in no way endorses or condones arbitrary or unfair procedures in the conduct of a political party's internal business. Certainly, Mr. McGlinchey will merit no high marks in the annals of history if his conduct was as outrageous as plaintiff asserts it was. However, the federal courts are not empowered to right every wrong in our society  regardless of how egregious some wrongs might be. Under the law of this circuit, Mr. McGlinchey's alleged wrongdoing does not constitute a breach of any federal right. Thus, plaintiff's complaint must be dismissed with prejudice.
NOTES
[1] In response, plaintiff argued that defendants should not complain about a sidewalk meeting since the McGlinchey election meeting was actually conducted "on a moving bus." Plaintiff's Memorandum, Doc. # 8, at 22 n.5. Defendants then accused plaintiff of improperly "eliding facts into this case through the form of memoranda footnotes." Defendant's Reply Memorandum, Doc. # 9, at 10.
[2] A "political" dispute, of course, does not necessarily raise a non-justiciable "political question." See Baker v. Carr, 369 U.S. 186, 209, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).
[3] Many of them, in particular those where courts have counseled against intervention in intra-party disputes, point to the decision I ought to reach here. See, e. g., Seergy, supra; Irish, supra; Dahl, supra.
[4] The requirements of these two provisions are identical. Adickes v. S. H. Kress & Co., 398 U.S. 144, 152 n.7, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); United States v. Price, 383 U.S. 787, 794-95 n.7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); Gibbs v. Titelman, 502 F.2d 1107, 1110 (3d Cir. 1974).