IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James D. Lewis, Jr.                          :
and James P. Ryan, Jr.,                      :
                                             :
                         Appellants          :
                                             :
            v.                               : No. 859 C.D. 2018
                                             : Submitted: August 3, 2018
Philadelphia County Board                    :
of Elections                                 :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  August 13, 2018


            James D. Lewis, Jr. and James P. Ryan, Jr. (collectively, Objectors),
Democratic Committeepersons elected in the City of Philadelphia's (City) 58th
Ward, 41st Division, appeal the order of the Philadelphia County Court of Common
Pleas (trial court) dismissing their appeal of the decision of the Philadelphia County
Board of Elections (Board) computing and/or certifying 11 other Democratic
Committeepersons in the City's 58th Ward[1] following the May 16, 2018 General
Primary Election.  We affirm.

            _____

            [1] Objectors challenge the election of the following Democratic Committeepersons:  (1)
Melvine Kriesman in the 58th Ward, 2nd Division; (2) Anna Hickson in the 58th Ward, 3rd
Division; (3) James McLaughlin in the 58th Ward, 3rd Division; (4) Lon Weisman in the 58th
Ward, 8th Division; (5) Marimama Abraham in the 58th Ward, 13th Division; (6) Katherine

Following their election as Democratic Committeepersons for the City's 58th Ward, 41st Division, Objectors ran for the offices of Ward Leader and Ward Chair at their Ward's Organizational Meeting, losing by one vote.[2] On May 31, 2018, Objectors filed the instant appeal in the trial court pursuant to Section 1407 of the Election Code,[3] alleging that each of the challenged Democratic

---

Montgomery in the 58th Ward, 27th Division; (7) Benji Eisenstein in the 58th Ward, 27th Division; (8) Cynthia German in the 58th Ward, 32nd Division; (9) Marshall Leibovitz in the 58th Ward, 37th Division; (10) Veronica Fossett in the 58th Ward, 43rd Division; and (11) Paul Karetny in the 58th Ward, 18th Division. Objectors later withdrew their challenges to the election of James McLaughlin and Anna Hickson.

[2] Section 812 of the Election Code, Act of June 3, 1937, P.L. 1333, added by the Act of June 14, 1947, P.L. 610, 25 P.S. §2842, states:

> Whenever two or more members of a political party shall be elected or appointed, as the rules of the party may provide, as members of a political committee to represent the members of such party in the respective election districts, such members shall constitute a political committee of said political party to function within such election district: Provided, that, When acting in the capacity of a political committee, such duly elected or appointed members shall be subject to the control, direction and supervision of the political committee of which they are members.

Additionally, Rule II, Article 2, Section B of the Rules of the Democratic Party of the City and County of Philadelphia provides, "All members of the Ward committee representing certain districts shall during their term of office have the proper qualifications and be resident voters of the district they represent in the said Ward Committee."

[3] Section 1407(a) states, in relevant part:

> (a) Any person aggrieved by any order or decision of any county board regarding the computation or canvassing of the returns of any primary or election, . . . may appeal therefrom within two days after such order or decision shall have been made, whether then reduced to writing or not, to the court specified in this subsection, setting forth why he feels that an injustice has been done, and praying for

2

Committeepersons who were purportedly elected as "write-in" candidates[4] did not receive the minimum number of votes at the election to hold that office as required by Section 1405 of the Election Code.[5]

Following two hearings, the trial court issued an order dismissing the appeal.[6] In the opinion filed in support of its order, the trial court determined: (1)

---

such order as will give him relief. . . . Unless a recount or recanvas is made under section 1404(g), the appeal must be made to the court of common pleas of the proper county.

25 P.S. §3157(a). *See also* Section 1756 of the Election Code, 25 P.S. §3456 ("The commencement of proceedings in the case of contests of the . . . fifth class[] shall be by petition, which shall be made and filed, as herein required . . . . The petition shall concisely set forth the cause of the complaint, showing where it is claimed that the primary or election is illegal . . . .").

[4] Section 1101(4) of the Election Code defines "irregular ballot" as "the paper or other material on which a vote is cast on a voting machine for persons who do not appear on the ballot labels[.]" 25 P.S. §3001(4).

[5] 25 P.S. §3155. Section 1405 states, in pertinent part:

The county board, in computing the votes cast at any primary or election, shall compute and certify votes cast on irregular ballots exactly as such names were written, stamped, affixed to the ballot by sticker, or deposited or affixed in or on receptacles for that purpose, and as they have been so returned by the election officers. . . . In the primary, the county board shall not certify the votes cast on irregular ballots for any person for . . . local party office unless the total number of votes cast for said person is equal to or greater than the number of signatures required on a nomination petition for the particular office.

In turn, Section 912.1(35) of the Election Code, added by the Act of December 12, 1984, P.L. 968, *as amended*, 25 P.S. §2872.1(35), requires a total of 10 votes for the office of party committeeperson.

[6] Committeeperson Eisenstein intervened in the appeal, and the City's Democratic Committee; 1st Ward Republican Executive Committee; 36th Ward Republican Executive

Objectors lacked standing to initiate the appeal challenging the election under Section 1407 of the Election Code; (2) Objectors' appeal under Section 1407 is procedurally improper because they do not challenge the computation of the write-in votes that were cast in the election; and (3) pursuant to Section 810 of the Election Code,[7] committeepersons may be properly elected to office by a plurality of 10 or more write-in votes cast in an election.  Objectors then filed the instant appeal.[8]

---

Committee; 1st Ward Republican Ward Leader; 36th Ward Republican Ward Leader; and the former Republican Ward Leaders participated as amici curiae.

[7] Section 810 states, in pertinent part, "Candidates for other party offices, who receive a plurality of the votes of the party electors at a primary, shall be the party officers of their respective parties."  25 P.S. §2840.

[8] With respect to appeals involving Section 1407(a), this Court has explained:

> [S]ection 1407(b) of the Election Code, 25 P.S. §3157(b), states that there shall be no appeal from the common pleas court.  This section, enacted in 1937, no longer has force since the passage in 1976 of the Judicial Code, which grants this Court jurisdiction over appeals in Election Code cases.  In addition, Section 1407(b) existed prior to the passage in 1968 of Article 5, Section 9 of the Pennsylvania Constitution, which provides that there "shall be a right of appeal from . . . an administrative agency to a court of record or to an appellate court . . . ."  Further, the Supreme Court noted in *In re Petition to Contest the General Election for District Justice in Judicial District 3603-03 Nunc Pro Tunc*, [670 A.2d 629 (Pa. 1996)], that this Court obtained jurisdiction over appeals involving elections when it was created in 1970.

*Dayhoff v. Weaver*, 808 A.2d 1002, 1005 n.5 (Pa. Cmwlth. 2002), *appeal denied*, 819 A.2d 548 (Pa. 2003).  On appeal, "[o]ur scope of review in election contest cases is limited to examination of the record to determine whether the trial court committed errors of law and whether the court's findings were supported by adequate evidence."  *Id.* at 1005 n.4 (citation omitted).

Objectors first argue that the trial court erred in determining that they did not have standing to prosecute the appeal regarding the election of the challenged Democratic Committeepersons under Section 1407 of the Election Code. With regard to the issue of standing, while Objectors may have been aggrieved by the results of the election of the Ward Leader and Ward Chair at the Ward's Organizational Meeting,[9] Objectors were not aggrieved by the Board's computation and/or certification of the votes cast in the relevant Divisions of the 58th Ward from which the challenged Democratic Committeepersons were elected.[10] After

---

[9] Section 807 of the Election Code states, in relevant part:

> There may be in each county a county committee for each political party within such county, the members of which shall be elected at the spring primary . . . . The county committee of each party may make such rules for the government of the party in the county, not inconsistent with law or with the State rules of the party, as it may deem expedient, and may also revoke, alter or renew in any manner not inconsistent with law or with such State rules, any present or future county rules of such party.

25 P.S. §2837.

In turn, Rule VI, Article 1, Section B of the Rules of the Democratic Party of the City and County of Philadelphia states, "All contests pertaining to the election of the County Committeeman and ward officers shall be filed with the County Committee. . . . In the case of the election of ward officers, the contest shall be heard by the Committee on Organization." We have explained that the judiciary "should not and may not interfere in the determinations of an association, including this political party, until the available internal remedies have been exhausted." *Fox v. Tucker*, 320 A.2d 919, 921 (Pa. Cmwlth. 1974).

[10] As the Supreme Court has explained, with respect to standing in an election matter, "'[f]or a party to be aggrieved, it must have: 1) a substantial interest in the subject matter of the litigation; 2) the party's interest must be direct; and 3) the interest must be immediate and not a remote consequence of the action.'" *Erfur v. Commonwealth*, 794 A.2d 325, 329 (Pa. 2002), *abrogated on other grounds*, *League of Women Voters v. Commonwealth*, 178 A.3d 737, 812-13 (Pa. 2018) (citation omitted). *See also* Section 1404(e) of the Election Code, 25 P.S. §3154(e) ("[U]pon petition of three voters of any district, verified by affidavit, that an error, although not

reviewing the record, the parties' appellate briefs, and the law, we conclude that the trial court properly determined that Objectors did not have standing to prosecute the appeal under Section 1407 of the Election Code and this issue has been ably resolved in the thorough and well-reasoned opinion of the Honorable Daniel J. Anders of the Philadelphia County Court of Common Pleas.  Therefore, we affirm the trial court's order based on its disposition of this issue in its opinion in the matter of *James D. Lewis, Jr. and James P. Ryan, Jr. v. Philadelphia County Board of Elections* (C.P. Phila., Case No. 180503453, filed July 31, 2018).[11]

---

apparent on the face of the returns, had been committed therein, . . . the [Board] shall at any time prior to the completion of the computation of all of the returns for the county, summon the election officers of the district, and said officers . . . shall conduct a recount or recanvas of all ballots cast."); Section 1701(a) of the Election Code, 25 P.S. §3261(a) ("[T]he court of common pleas, or a judge thereof, of the county in which any election district is located in which ballots were used, shall open the ballot box of such election district used at any . . . primary election held therein, and cause the entire vote thereof to be correctly counted by persons designated by such court or judge, if three qualified electors of the election district shall file . . . a petition duly verified by them, alleging that upon information which they consider reliable they believe that fraud or error . . . was committed in the computation of the votes cast . . . for any particular office or offices in such election district, or in the marking of the ballots, or otherwise in connection with such ballots."); Section 1702(a)(1) of the Election Code, 25 P.S. §3262(a)(1) ("[T]he court of common pleas, or a judge thereof, of the county in which any election district is located, shall make visible the registering counters of the voting machine or machines used in such election district at any primary or election, and . . . shall recanvas the vote cast therein, if three qualified electors of the election district shall file a petition, duly verified by them, alleging that, upon information which they consider reliable, they believe that fraud or error . . . was committed in the canvassing of the votes cast on such machine or machines."); Section 1751 of the Election Code, 25 P.S. §3431 ("[Certification challenge c]ases of the fifth class shall be tried and determined upon petition of twenty registered electors, as hereinafter provided, by the court of common pleas of the county in which such contested election was held.").

[11] Based on our disposition of this issue, we will not reach the other claims raised by Objectors in this appeal, and we do not adopt the trial court's reasoning in any other respect.

_____

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James D. Lewis, Jr.                    :
and James P. Ryan, Jr.,                :
                                       :
                    Appellants         :
                                       :
          v.                           :  No. 859 C.D. 2018
                                       :
Philadelphia County Board              :
of Elections                           :


# O R D E R


AND NOW, this 13th day of August, 2018, the order of the Philadelphia County Common Pleas Court dated June 8, 2018, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CIVIL

| | |
|---|---|
| JAMES D. LEWIS, JR.<br>AND JAMES P. RYAN, JR.<br>　　　　Petitioners/Appellants,<br>　　vs.<br><br>PHILADELPHIA COUNTY<br>BOARD OF ELECTIONS,<br>　　　　Respondent/Appellee. | 859 CD 2018<br><br>Trial Court Case No. 180503453 |

Lewis Etal Vs Philadelphia County Board Of E-OPFLD



18050345300044

## OPINION

Petitioners James D. Lewis, Jr. and James P. Ryan, Jr. appeal from the trial court's June 8, 2018 order dismissing Petitioners' Petition and Statutory Appeal from the Philadelphia County Board of Elections's ("County") certification of certain Democratic committeepersons. The trial court dismissed Petitioners' Petition and Statutory Appeal because Petitioners lacked standing. For the reasons stated herein, the Commonwealth Court should affirm the trial court's order.

## FACTUAL BACKGROUND

Petitioners are residents of and elected Democratic committeepersons for the 41st division of the 58th ward of Philadelphia. In June of 2018, Petitioners ran for Ward Leader and Ward Chair of the 58th ward but lost by two votes. Petitioners allege that the County's certification of the election of eleven Democratic committeepersons of the 58th ward was improper because those eleven Democratic committeepersons of the 58th ward did not receive the minimum of number of votes required pursuant to 25 P.S. § 3155 of the Election Code.

The challenged Democratic committeepersons are from the 2nd, 3rd, 8th, 13th, 18th, 27th, 32nd, 37th, and 43rd divisions of the 58th ward. It is uncontested that all eleven of the challenged committeepersons were "write-in candidates" that received only write-in or irregular ballots.[1] In

---

[1] Under 25 P.S. § 3001(4), a write-in or irregular ballot refers to the paper or other material on which a vote is cast on a voting machine for persons whose names do not appear on the ballot labels.

other words, the challenged committeepersons were not "candidates" as defined by the Election Code because their names did not appear on the ballot as a result of a successfully filed nominating petition. Instead, the challenged committeepersons were "persons" for whom voters cast irregular ballots by writing, stamping or affixing their names to the ballot by sticker or otherwise. It is uncontested that none of the challenged committeepersons received ten or more write-in votes.

Finally, Petitioners concede that they are not residents or registered voters in any of the divisions of the committeepersons that they seek to challenge. NT. 6/6/2018 at 20:2-4; 49:6-8; NT. 6/8/2018 at 40:21-23.

PROCEDURAL HISTORY

On May 31, 2018, Petitioners filed a timely appeal from the Philadelphia County Board of Elections to the Court of Common Pleas. Followings hearings on June 6, 2018 and June 8, 2018, the trial court dismissed Petitioners' Petition and Appeal because Petitioners lacked standing, *i.e.*, Petitioners were not aggrieved parties within the meaning of 25 P.S. § 3157 of the Election Code. On June 11, 2018, Petitioners filed this timely appeal to the Commonwealth Court of Pennsylvania.

DISCUSSION

On appeal, Petitioners argue that the trial court erred in dismissing Petitioners' Petition and Appeal for lack of standing.

1. Petitioners Do Not Have Standing Because They Are Not Aggrieved Parties Within The Meaning of 25 P.S. § 3157 Of The Election Code

In general, to have standing, a party must have a "direct, substantial, and immediate interest" in the outcome of the litigation, which means there must be some discernible adverse effect to some interest other than the abstract interest of all citizens. *Wm. Penn Parking Garage,*

-2-

*Inc. v. Pittsburgh*, 346 A.2.d 269, 282 (Pa. 1975). The adverse effect or harm suffered must be "immediate and not a remote consequence of the judgment." *Id.* at 286.

A person has standing to contest an election matter only if that person is eligible to vote in the particular election. *In Re Nomination of Pasquay*, 525 A.2d 13, 14 (Pa. Commw. Ct. 1987). "The factor that elevates the general interest of each registered voter to confer standing to challenge a candidate's nomination petition is that voter's eligibility to participate in the election." *Id.*

Here, Petitioners assert that they have standing to challenge the County's decision because they are "aggrieved persons" within the meaning of 25 P.S. § 3157, which states, in relevant part:

> Any person aggrieved by any order or decision of any county board regarding the computation or canvassing of the returns of any primary or election of this act, may appeal therefrom within two days after such order or decision shall have been made... setting forth why he feels that an injustice has been done.

In *Samms*, our Supreme Court held that "to have standing to challenge a nomination petition, one must be registered to vote in the district holding the primary election and be a member of the political party to which the nomination pertains." *In Re Nomination of Samms*, 674 A.2d 240, 242 (Pa. 1996). The Supreme Court held that no other factors are relevant such as a challenger's underlying intentions and motivations. *Id.* The Supreme Court explained that the "factor that elevates the general interest of each registered voter to one that is sufficiently substantial to confer standing to challenge a candidate's nomination petition is that voter's eligibility to participate in the election." *Id.* (citing *Pasquay*, 525 A.2d at 14).

Here, Petitioners concede that they are not eligible to vote in any of the divisions for which they challenge the election of committeepersons. Pursuant to the clear holding of *Samms*, residing in the 58th ward – but not in the specific division of any challenged committeeperson – is

-3-

insufficient to confer standing because Petitioners were not eligible to vote for any of the contested committeepersons. As a result, the trial court properly determined that Petitioners did not have standing to contest any of the elections of the contested committeepersons.

In an attempt to avoid the consequence of *Samms*, Petitioners argue that they are aggrieved persons because the eleven contested committeepersons voted in the election for Ward Leader and Ward Chair, and that Petitioners lost their election to those positions by two votes. Petitioners are wrong for at least two reasons. First, at the hearing, Petitioners conceded that they had no personal knowledge regarding for whom each of the challenged committeepersons voted. NT. 6/8/2018 at 46:2-17. As a result, any alleged harm to Petitioners is entirely speculative because there is no evidence that they lost as a result of any vote by one of the contested committeepersons.

Second, even if Petitioners were able to prove that they lost the Ward Leader and Ward Chair elections as a result of voting by the eleven challenged committeepersons, that is too remote of a collateral consequence to confer standing as a substantial, direct, and immediate interest. Stated differently, Petitioners' interest is more similar to the general public's interest rather than the interest of the eligible voters of each division whose elections are contested. Petitioner's broad interpretation of standing under 25 P.S. § 3157 would contravene the purpose of the statute and run afoul of the clear dictates of *Samms*, which held that no other factor is relevant other than a person's eligibility to vote in the election that they contest. Following Petitioners' argument to its logical conclusion, a city councilperson who lost the contest for City Council President could challenge the election of a councilperson for a district in which he or she does not reside and was not an eligible voter; this would be an absurd result. The Supreme Court's bright line rule on standing in election matters correctly recognizes and elevates the interest of those who were eligible to vote in the election over those who were not. To hold

-4-

otherwise would allow ineligible voters (such as Petitioners) to disenfranchise eligible voters who voted in the challenged election and to impair their constitutional right to vote.

Thus, the trial court properly determined that Petitioners were not aggrieved persons pursuant to 25 P.S. § 3157.

2.    Petitioners' Appeal Pursuant to 25 P.S. § 3157 Is Procedurally Improper

Even if Petitioners had standing, the trial court properly dismissed Petitioners' Petition and Appeal because it was procedurally improper to use 25 P.S. § 3157 to challenge the certification of the election of the committeepersons. Section 3157 provides relief for any "person aggrieved by any order or decision of any county board regarding the **computation or canvassing of the returns** of any primary or election of this act." 25 P.S. § 3157 (emphasis added). Here, Petitioners concede – and do not challenge – that the County properly computed or canvassed the votes cast in the election of the committeepersons. NT. 6/6/2018 at 22:9-12; 31:11-32:3. Instead, what Petitioners do challenge is the County's **certification** of the challenged committeepersons as the winners of their respective elections. Because Petitioners do not claim any error in the computation of the returns – such as improperly counting an irregular ballot – but rather only challenge the certification of the contested committeepersons as duly elected, Petitioners' appeal under Section 3157 is improper.

Contrary to Petitioners' argument as the hearing, the trial court's finding that Petitioners' appeal under Section 3157 is improper does not leave Petitioners without a remedy. First, Petitioners filed a contest in a ward committee election. Pursuant to Rule Six of the Democratic Committee Bylaws,

> All contests regarding membership in the Ward Committee shall be
> instituted by filing a petition which shall contain the names,
> addresses and division of the petitioner or petitioners, the names,
> addresses and the division of the person or persons against whom
> the contest is filed, the names of all persons who received votes for

-5-

membership in the Ward Committee as a candidate whose name was… written in, showing the number of votes each person received according to the official returns, and all other averments or facts which the petitioner or petitioners rely upon and feel able to prove in support of the contest and claim (if claiming) to the right of membership in a Ward Committee. *Exhibit R1*.

Second, Petitioners could have filed a *quo warranto* action, which challenges a person's title or right to public office, such as when a certified winner allegedly does not receive the requisite votes.[2] *See generally, In re One Hundred or More Qualified Electors*, 683 A.2d 283, 286 (Pa. 1996).

3.      A Person Who Receives Write-In Votes Must Receive Votes Greater Than Or Equal To The Number Of Signatures Required To Get On The Ballot For That Office

Having properly determined that Petitioners lacked the requisite standing and that it was procedurally improper to use Section 3157 to challenge the contested committeepersons' elections, the trial court need not address the merits of Petitioners' claims. However, in light of the fact that (1) election matters often escape appellate review, (2) there are novel issues of law raised by Petitioners, and (3) the trial court's disagreement with the only published opinion on the certification of irregular ballots, the trial court will address the merits of Petitioners' remaining claims.[3]

---

[2] Conversely, if the County failed to certify the candidate with the highest votes, the appropriate remedy is to file a mandamus action requiring the County to certify the candidate who received the highest number of votes. *See generally In re One Hundred or More Qualified Electors*, 683 A.2d 283, 286 (Pa. 1996)

[3] *Santimyer v. Westmoreland Cty. Bd. of Elections*, 9 Pa. D. & C.3d 303 (C.P. 1978). In *Santimyer*, the petitioner received four of the five votes cast in the election. Because all four votes received by the petitioner were write-in or irregular ballots, the election board did not certify the petitioner as a committeeperson because he did not receive the minimum number of ballots required under Section 3155 (requiring a person to receive at least the number of votes required by a nominating petition). On appeal to the trial court, Judge Hudock held that the "election board, by refusing to certify [petitioner] as committeeman, renders ineffective section 2840." In doing so, Judge Hudock found that Section 2840's use of the word plurality was "the keystone of the election process of party officers, [and that] it must be the guiding beacon in this case of statutory interpretation." Judge Hudock then concluded that the "election board [gave] misplaced emphasis to section 3155 in its refusal to certify" petitioner. As explained in this Opinion, this trial court believes that Judge Hudock erred in his statutory construction by finding a conflict when none existed, failing to apply the plain language of each statute, or both.

-6-

There are three relevant statutes:

- 25 P.S. § 2840, entitled, "Who shall be declared elected members of National or State committee and party offices," states, in relevant part, that "Candidates for other party offices, who receive a plurality of the votes of the party electors at a primary, shall be the party officers of their respective parties."

- 25 P.S. § 3155, entitled, "Manner of Computing Irregular Ballots," states: "In the primary the county board shall not certify the votes cast on irregular ballots for any person for . . . local party office unless the total number of votes cast for said person is equal to or greater than the number of signatures required on a nomination petition for the particular office."

- 25 P.S. § 2872.1, entitled, "Number of signers required for nomination petitions of candidates at primaries," states, in relevant part, that "Candidates for nomination of offices as listed below shall present a nominating petition containing at least as many valid signatures of registered and enrolled members of the proper party as listed below." The parties stipulated that Section 2872.1(35) – referring to "[a]ll other public and party offices" applies to Democratic committeepersons elected in any division of any ward in Philadelphia. As a result, any person who wishes to become a candidate for Democratic Committeeperson in any division must present a nominating petition with 10 valid signatures from members of the Democratic Party who reside in each division.

Preliminarily, the trial court observes that Section 2840 applies to "candidates" whose name appear on the ballot by virtue of a successful nominating petition, whereas Section 3155 applies to "persons" who are not "candidates" and whose names do not appear on the ballot (thus, necessitating a write-in or irregular ballot).[4]

---

[4] As an initial matter, the trial court notes that the rules of statutory construction require courts to read statutes in *pari materia* when they relate to the same persons or things or to the same class of persons or things and to construe the statutes together if possible as one statute. 1 Pa.C.S § 1932. If a conflict between two statutes is irreconcilable, the special provision shall prevail over the general provision. 1 Pa.C.S. § 1933

-7-

The trial court holds that, pursuant to Section 2840, if a person is a candidate whose name appears on the ballot, then the candidate who receives a plurality of the votes is certified as the duly elected officer holder. In this context, plurality simply means the candidate who receives more votes than any other candidate but does not receive an absolute majority of the total votes cast; plurality does not mean that there is a minimum vote requirement for a candidate.

The trial court further holds that, pursuant to Section 3155, if a person does not appear on the ballot, then that person is certified as the duly elected office holder only if that person receives a total number of votes that is equal to or greater than the number of signatures required for a nomination petition for that office.

In the chart below, the trial court shows how Sections 2840 and 3155 operate under several different scenarios.

| SCENARIO | CANDIDATE | VOTES | ELECTED | EXPLANATION |
|---|---|---|---|---|
| 1. | Candidate A | 2 | Yes | Candidate A wins with no minimum vote required |
| 2. | Candidate A<br>Write-In B | 4<br>10 | No<br>Yes | Write-In B wins with minimum required votes |
| 3. | Candidate A<br>Candidate B<br>Write-In C | 8<br>8<br>10 | No<br>No<br>Yes | Write-In C wins with minimum required votes and a plurality of votes |
| 4. | Candidate A<br>Write-In B | 3<br>7 | No<br>No | Write-In B loses because did not receive minimum required votes even though does have plurality |
| 5. | Write-In A | 10 | Yes | Write-In A wins with minimum required votes |
| 6. | Write-In A | 9 | No | Write-In A loses because did not receive minimum required votes |
| 7. | Write-In A<br>Write-In B | 6<br>3 | No<br>No | Both Write-In lose because neither received required minimum votes even though Write-A has plurality |
| 8. | Write-In A<br>Write-In B<br>Write-In C | 6<br>5<br>4 | No<br>No<br>No | All lose; No Write-In received minimum required votes even though Write-In A has plurality |

As demonstrated above, Sections 2840 and 3155 do not conflict but rather work together while still retaining the effect of both statutes.

-8-

## CONCLUSION

Based on the foregoing, the Commonwealth Court should affirm the trial court's June 8, 2018 order.

BY THE COURT:

_____

DANIEL J. ANDERS, JUDGE
Dated: July 31, 2018