Robert R. BLANK, et al., Plaintiffs,

v.

David HEINEMAN, et al., Defendants.

No. CV. 90–0–799.

United States District Court,
D. Nebraska.

Jan. 11, 1991.

---

Douglas Veith, Scott S. Phillips, David A. Christensen, Veith, Christensen & Phillips, Bellevue, Neb., for plaintiffs.

James S. Mitchell, William G. Dittrick, Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, Omaha, Neb., for David Heineman, Norm Riffel, Chuck Sigerson, Lee Terry and Al Todd.

MEMORANDUM OPINION

STROM, Chief Judge.

This matter is before the Court on defendants' motions to dismiss (Filing Nos. 3 and 24). The Court conducted a hearing on January 3, 1991, at which time arguments were presented to the Court. Defendants filed their motions pursuant to Fed.R.Civ.P. 12(b)(1) and (6). Defendants allege that the Court lacks jurisdiction over the subject matter, that no justiciable issue exists, and that the complaint fails to state a claim upon which relief can be granted.

Plaintiffs filed their complaint alleging that the Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.* Plaintiffs allege violations of 42 U.S.C. § 1971 (Voting Rights Act of 1965), 42 U.S.C. § 1983, 42 U.S.C. § 1985(3), the First and Fourteenth Amendments of the United States Constitution, and Neb.Rev.Stat. §§ 32–101, *et seq.* (Filing No. 2, ¶ 5).

Plaintiffs' complaint essentially concerns their alleged wrongful removal as officers of the Douglas County Republican Party by the Executive Committee of the Republican Party of Nebraska.[1] Plaintiffs allege that during the months prior to November, 1990, "various Defendants to this action conspired together to remove and replace various Plaintiffs from the respective positions they hold within the Douglas County Republican Party" (Filing No. 2, ¶ 8).

On December 1, 1990, the Executive Committee unanimously voted to remove plaintiff Sieler from the Douglas County Chairmanship and replace him with Defendant Sigerson (Filing No. 2, ¶ 10). Specifically, in a letter dated December 1, 1990, Norm Riffel, as State Chairman of the Nebraska Republican Party, stated that "the State Executive Committee voted unanimously to remove John Sieler as the Douglas County Republican Party Chairman for failing to adequately perform his duties as

---

1. Plaintiffs' complaint incorporates two exhibits—a letter dated November 28, 1990, which will be referred to as "exhibit 1", and a letter

dated December 1, 1990, which will be referred to as "exhibit 2".

County Chairman." (Filing No. 2, exhibit 2).

Plaintiffs filed this action alleging that actions of the defendants were due in part to the fact that plaintiffs are evangelical christians (Filing No. 2, ¶ 11). Plaintiffs therefore allege that defendants' actions are violative of their constitutional rights and the rights secured to them by various laws of the United States and the State of Nebraska (Filing No. 2, ¶ 5). The Court notes that all of the alleged activity in this case relates solely to the removal of the plaintiffs from their elected positions within the internal structure of the Douglas County Republican Party.

## Application Of Voting Rights Act of 1965

■ Plaintiffs allege a violation of the Voting Rights Act of 1965 which provides in part:

> (a)(1) All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude.
>
> (2) No person acting *under color of law* shall—
>
> .   .   .   .   .

42 U.S.C. § 1971 (emphasis added). The Court finds this statute inapplicable to this action. The Voting Rights Act governs racial discrimination and activities of persons acting under color of law. In this action, plaintiffs do not allege that any of the defendants' activities were under color of law, nor do plaintiffs allege that any of the defendants' activities were due to racial considerations. Accordingly, the Court finds that plaintiffs cannot maintain their action under the Voting Rights Act of 1965.[2]

Application of 42 U.S.C. § 1983

■ Plaintiffs allege that the actions of defendants constitute a violation of 42 U.S.C. § 1983, which provides in part:

> Every person who, *under color* of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(Emphasis added). It is clear that to establish a violation of 42 U.S.C. § 1983, the defendants must have acted under color of law. As the plaintiffs have failed to allege, and further that the Court fails to find, that defendants acted under color of law, the plaintiffs cannot maintain their action under 42 U.S.C. § 1983.

Application of 42 U.S.C. § 1985(3)

Plaintiffs allege that defendants' actions constitute a conspiracy in violation of 42 U.S.C. § 1985(3). That section permits recovery of damages against a conspirator interfering with civil rights as follows:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a

---

**2.** While not argued, the Court does not believe that this Act applies to the election of officers to positions within the Douglas County Republican Party.

Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). The essential issue is whether the this action come within the purview of § 1985(3) so that this Court has jurisdiction to consider plaintiffs' allegations that defendants conspired to deny plaintiffs their First Amendment rights by making decisions based on plaintiffs' religion.

■ In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), black individuals brought suit alleging that certain white individuals conspired to deprive the plaintiffs of their civil rights in violation of 42 U.S.C. § 1985(3). The defendants allegedly stopped the plaintiffs' automobile on a public highway and had detained, assaulted, beaten, and injured them. The Court held that a cause of action existed for black citizens "who have been the victims of conspiratorial, racially discriminatory private action aimed at depriving them of the basic rights that the law secures to all free men." *Id.* at 105, 91 S.Ct. at 1800. However, the Court noted that, although the statute governs private conspiracies concerning racial discrimination, coverage of the statute was not intended to apply to all tortious, conspiratorial interferences with the rights of others. *Id.* at 101, 91 S.Ct. at 1797. Rather, the language in § 1985(3) requiring intent to deprive of equal protection, or equal privileges and immunities, "means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 102, 91 S.Ct. at 1798.

In *United Brotherhood of Carpenters and Joiners, Local 610 v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), a construction company that hired non-union employees, and two of the company's employees, brought suit alleging that the defendants conspired to deprive them of their legally protected rights in violation of 42 U.S.C. § 1985(3). The suit arose out of a protest at a construction site where company employees, including the two employee plaintiffs, were assaulted and beaten, and construction equipment was burned and destroyed. The United States District Court for the Eastern District of Texas found, and the United States Court of Appeals for the Fifth Circuit affirmed, that a violation of equal protection of the laws existed within the meaning of § 1985(3). The courts held that the purpose of the conspiracy was to deprive plaintiffs of their First Amendment right not to associate with a union. The courts rejected the argument that it was necessary to show some state involvement to demonstrate an infringement of First Amendment rights. *Id.* at 830, 103 S.Ct. at 3357.

The United States Supreme Court reversed stating that "an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the State." *Id.* Because the rights claimed to have been infringed had their source in the First Amendment, it was necessary for plaintiffs to allege and prove that the State was somehow involved in or affected by the conspiracy to make out a § 1985(3) case. *Id.* at 833, 103 S.Ct. at 3358. Therefore, the Supreme Court held that the Court of Appeals erred in holding that § 1985(3) prohibits wholly private conspiracies to abridge the right of association guaranteed by the First Amendment. *Id.*

■ The parties have failed to cite, nor has the Court been able to find, any specific authority to support plaintiffs' position that § 1985(3) affords relief against private conspiracies based solely on religious classifications in this jurisdiction. Plaintiffs refer to *Action v. Gannon*, 450 F.2d 1227 (8th Cir.1971) (en banc), wherein the Court held that jurisdiction existed under § 1985(3) to enjoin two organizations, the Black Liberation Front and Action, and their members, from continuing to disrupt

religious services of a predominately white Catholic parish.

In *Gannon,* the defendants had staged a series of demonstrations at the St. Louis Cathedral. On one occasion, eight or nine members of Action entered the cathedral prior to a noon service, went to the communion rail and sat down, and blocked the area where the service was to be held, thereby causing the service to be cancelled. *Id.* at 1230. Another demonstration included a member walking down the center aisle in the cathedral chanting "Racists, racists—white Christian racists." An altercation followed and the demonstrators had to be removed by police. *Id.* On a different occasion, a member of Action entered the cathedral during service, approached the lectern, and requested permission to speak for five minutes. When permission was denied, she began reading "demands" and eventually had to be forcibly removed by the St. Louis police. Defendants demanded, *inter alia,* that the church withdraw its money from investments viewed as detrimental to blacks, and that the church devote substantial portions of its income to programs dedicated to black advancement. *Id.*

The Court held that § 1985(3) encompassed the conspiracy under the facts in that case. *Id.* at 1232. The Court reasoned that the defendants purported to act on behalf of the black citizens of St. Louis, Missouri, and were demonstrating against a predominately white parish, as well as against other white churches throughout St. Louis, to benefit the economically deprived black people. *Id.* The Court stated that the "gravamen of the complaint is that the defendants *disrupted* the plaintiffs' re-

ligious services, not that they had merely been obnoxious or unsettling" in exercising their right to voice their opinion. *Id.* (emphasis added). The Court stated that it was "clear from the facts in this case that the defendants were stimulated to disrupt the church services by *racial* and economic motives" and that, under those circumstances, the plaintiffs' First Amendment rights of freedom of assembly and worship were protected. *Id.* at 1232, 1234–35 (emphasis added).

The Court finds that *Gannon* is inapplicable to this case. *Gannon* involved activity which was directed against plaintiffs due primarily to racial considerations. The demonstrations were undertaken by blacks in an attempt to correct what blacks considered to be discrimination by whites. The demonstrations by the defendants occurred either while the plaintiffs were attempting to assemble, or after they had assembled and were participating in worship. The disruptions were so violent that the St. Louis police had to be utilized to remove the demonstrators by force.

In contrast, plaintiffs allege in this case that they were discriminated against solely because they are evangelical christians. However, plaintiffs do not allege that defendants in any way disrupted or interfered with their attempts to assemble and worship. There has been no allegation in any way that plaintiffs desired to practice their religion but were prohibited from doing so because of the conduct of the defendants. The Court finds plaintiffs' argument that defendants' actions constitute a private conspiracy in violation of § 1985(3) because of plaintiffs' association with evangelical christians to be unpersuasive.[3]

---

**3.** The Court notes that in *Lewis v. Pearson Foundation, Inc.,* 908 F.2d 318 (8th Cir.1990), a case decided July 10, 1990, the United States Court of Appeals for the Eighth Circuit reversed a decision of the district court and stated that the plaintiff, as a member of a class of pregnant women desiring an abortion, possessed the class-based, invidiously discriminatory animus required by § 1985(3). *Id.* at 319. The Court held that an alleged conspiracy to prevent abortion was actionable absent a showing of state action. However, *Lewis v. Pearson Foundation, Inc.,* 908 F.2d 318 (8th Cir.1990) was vacated September 7, 1990, and the Court, on rehearing

en banc, affirmed the decision of the district court. *Lewis v. Pearson Foundation, Inc.,* 917 F.2d 1077 (8th Cir.1990) (en banc).

This Court notes that the Honorable Floyd R. Gibson, in his dissent, stated that the decision of the district court should have been affirmed because the plaintiff had not shown that the state was involved in or affected by the conspiracy, as required by the United States Supreme Court in *United Brotherhood of Carpenters and Joiners, Local 610 v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). *Lewis v. Pearson Foundation, Inc.,* 908 F.2d 318, 326 (8th

The United States Supreme Court's clear pronouncement in *United Brotherhood of Carpenters and Joiners, Local 610 v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), that an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the State is controlling, and the Court finds that state action must exist for plaintiffs to maintain their action under 42 U.S.C. § 1985(3).[4]

In *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court set forth a two-part test to determine if challenged action was "fairly attributable" to the state. Specifically, the Court stated that "[f]irst, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* at 937, 102 S.Ct. at 2753.

In this case, plaintiffs argued at hearing that if the defendants are not prevented from removing them from their positions based on the plaintiffs' religious beliefs, ultimately primary and general elections will be affected. The plaintiffs reason that there will be a lack of candidates with certain religious beliefs progressing from lower levels within the Republican party itself to positions in electorial races. The plaintiffs therefore attempt to transform the internal affairs of the Republican party in this case into activity affecting primary and general elections that would constitute state action.

■ The Court finds plaintiffs' argument which attempts to "bootstrap" and transform actions relating solely to the internal activity of a political party into activity which constitutes state action to be unpersuasive. Simply stated, the plaintiffs' argument, carried to its logical extension, would transform *any* action of a political party involving internal affairs into state action. Courts generally and consistently have been reluctant to interfere with the internal operations of a political party. *Irish v. Democratic–Farmer–Labor Party,* 399 F.2d 119, 120 (8th Cir.1968). In *Lynch v. Torquato,* 343 F.2d 370 (3rd Cir.1965), the court stated that the citizen's constitutional right to equality as an elector applies to the choice of those who shall be elected representatives in the conduct of government, not in the internal management of a political party. The normal role of party leaders in conducting internal affairs of their party, other than primary or general elections, does not make their party offices governmental offices or the filling of those offices state action. *Id.* at 372. *See also, Dahl v. Republican State Committee,* 319 F.Supp. 682, 684 (W.D.Wash.1970) (election of state committee members is not an integral phase of the state-created election process).

The alleged actions relate solely to the internal affairs of the Douglas County Re-

Cir.1990) (Gibson, J., dissenting). Judge Gibson stated that the Supreme Court's decision in *Scott* required a showing of state action because the plaintiff, "like the plaintiffs in *Scott* who sought to redress First Amendment rights, bases her section 1985(3) claim on a right that is by definition a right protected only against state interference." *Id.* (Gibson, J., dissenting).

4. The Court has noted *Volk v. Coler,* 845 F.2d 1422 (7th Cir.1988), in which a plaintiff brought an action alleging sex discrimination and sexual harassment against the Illinois Department of Children and Family Services and certain supervisors under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and Title VII. The Court stated that 42 U.S.C. § 1985(3) "extends beyond conspiracies to discriminate against persons based on race to con-

spiracies to discriminate against persons based on sex, religion, ethnicity, or political loyalty." *Id.* at 1434 (citing *Murphy v. Mount Carmel High School,* 543 F.2d 1189, 1192 n. 1 (7th Cir.1976)). However, after careful review, the Court notes that those cases relied on by the Court in *Volk* did not concern private conspiracies based solely on religion. Therefore, the Court finds that *Volk* is inapplicable to this case. *See also, Grimes v. Smith,* 776 F.2d 1359, 1366 (7th Cir. 1985) ("The import of both *Griffin* and *Scott* is that the legislative history of § 1985(3) does not support extending the statute to include conspiracies other than those motivated by a racial, class-based animus against 'Negroes and their supporters' ").

publican Party and cannot be said to constitute the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. Further, the defendants have not been shown to be persons who may fairly be said to be state actors relating to the alleged activity. Finally, there is no allegation that the alleged actions were "fairly attributable" to the State. For these reasons, the Court finds that plaintiffs may not maintain their action under 42 U.S.C. § 1985(3).

As the Court has found that plaintiffs cannot maintain their action under the federal statutes as alleged, this Court lacks jurisdiction under 28 U.S.C. § 1331. Further, diversity of citizenship jurisdiction does not exist under 28 U.S.C. § 1332. Therefore, as this Court lacks jurisdiction over this matter, the Court will grant defendants' motions and dismiss plaintiffs' complaint in its entirety. In view of these findings and conclusions, there is no need to address defendants' argument that this action presents a nonjusticiable political question.

Defendants move pursuant to Fed. R.Civ.P. 11 for an order imposing sanctions on plaintiffs for bringing this action. Rule 11 provides that the "signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper and that to the best of his knowledge, information and belief formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for extension, modification or reversal of existing law and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation." After reviewing plaintiffs' complaint and the applicable law, the Court finds that this is not an appropriate action for sanctions. Accordingly, defendants' prayer for an award of sanctions is denied. A separate order in accordance with this opinion will be issued this date.