Philip VALENTI, Plaintiff,

v.

PENNSYLVANIA DEMOCRATIC STATE COMMITTEE, Senator J. William Lincoln, Richard Bloomingdale, Dianne Beecher, Rena Baumgartner, Defendants.

Civ. A. No. 1:CV–94–72.

United States District Court, M.D. Pennsylvania.

Feb. 2, 1994.

---

Samuel C. Stretton, West Chester, PA, for plaintiff.

Karen M. Balaban, Schnader, Harrison, Segal & Lewis, Harrisburg, PA, for defendant Pennsylvania Democratic State Committee.

Gordon A. Einhorn, Karen M. Balaban, Schnader, Harrison, Segal & Lewis, Harrisburg, PA, for defendant Senator J. William Lincoln, Chairman, Richard Bloomingdale, Executive Director, Dianne Beecher, Political Director, and Rena Baumgartner, Vice Chairman, Pennsylvania Democratic State Committee.

## MEMORANDUM

CALDWELL, District Judge.

We are considering the plaintiff's motion for a preliminary injunction and the defendants' motion to dismiss. The plaintiff, Philip Valenti, filed this civil rights action alleging that the defendants are violating his right to equal protection under the fourteenth amendment and his rights under the first amendment to freedom of speech and freedom of association. The defendants are the Pennsylvania Democratic State Committee (State Committee); State Senator J. William Lincoln, the Chairman of the State Committee; Richard Bloomingdale, its Executive Director; Dianne Beecher, its Political Director; and Rena Baumgartner, its Vice-Chairman.

The plaintiff, a registered Democrat and a candidate for the Democratic nomination for governor of Pennsylvania, is contesting a decision by the State Committee that candidates for the Democratic nomination for several statewide offices may not distribute, in support of their candidacy at an endorsement meeting to be held by the State Committee, literature that has been written and produced by a third party independently of the candidate's campaign.

We held a hearing on the motion for injunctive relief on Monday, January 31, 1994. Based on the testimony and exhibits produced at that hearing and the plaintiff's complaint, the following is the background to this litigation.

The Pennsylvania primary election is scheduled for May 10, 1994. At that election, the members of the political parties in the Commonwealth will select the candidates to represent the parties in the general election in the fall of this year for various statewide offices, including the governorship. On February 4, 1994, the State Committee will hold a meeting of its Nomination Recommendation Endorsement Committee. The purpose of the meeting is to select by vote of the members of the Endorsement Committee those candidates the party will officially endorse for the statewide offices. In accord with Rule V of the Rules of the Pennsylvania Democratic Party, (plaintiff's exhibit 6), the endorsement committee includes several hundred Democrats from around the Commonwealth. At the meeting, candidates will have the opportunity to make presentations to members of the Committee concerning their stands on the issues relevant to the election.

As part of this process, the candidates will be allowed to set up tables containing campaign literature. However, defendant Bloomingdale, in conjunction with defendant Lincoln, has decided that no candidate will be permitted to distribute literature written and produced by another person independent of the candidate's campaign. The candidate will only be allowed to possess and circulate literature written and produced by the candidate's campaign for the purposes of the campaign. That literature may incorporate the ideas of a third person, but it may not consist solely of the third person's writings unconnected to the candidate's campaign.[1]

_____

1. The defendants argued in their brief in opposition to the plaintiff's motion that this decision

Plaintiff contends that this violates his rights under the first amendment to freedom of association and to freedom of expression. He is an adherent of the ideas of Lyndon LaRouche, and wants to use LaRouche's ideas or publications in his campaign. The plaintiff does not believe that he can express those ideas adequately in his own words and thus desires to have LaRouche's own works available at the endorsement meeting. The defendants' limitation on written material, however, inhibits him in expressing his point of view and punishes him for associating with Lyndon LaRouche. The plaintiff's equal protection claim alleges that he has been singled out for this treatment because of his beliefs while other Democratic candidates have not. He seeks an injunction requiring the defendants, among other things, to allow him to distribute in support of his candidacy, not only his own literature, but literature from any other person.

In moving to dismiss, the defendants argue that the plaintiff cannot establish an essential legal element of his federal claim. They contend that Valenti cannot show that the defendants are acting under color of state law, a requisite element of a 42 U.S.C. § 1983 action, *see Rendall–Baker v. Kohn,* 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), or as they alternatively put it, in light of the fourteenth amendment, he cannot show there is any state action involved in their decision to limit the literature to the candidates' own. *Id.*

In support of their argument the defendants cite, among other cases, *Kay v. New Hampshire Democratic Party,* 821 F.2d 31 (1st Cir.1987), *aff'g, Kay v. Bruno,* 605 F.Supp. 767 (D.N.H.1985); *Koczak v. Grandmaison,* 684 F.Supp. 763 (D.N.H.1988); *McIntosh v. White,* 582 F.Supp. 1244 (E.D.Ark.1984), *subsequent history summarized in McIntosh v. Arkansas Republican Party—Frank White Election Committee,* 856 F.2d 1185 (8th Cir.1988); and *McMenamin v. Philadelphia County Democratic Ex-*

*ecutive Committee,* 405 F.Supp. 998 (E.D.Pa. 1975). In all of these cases, the courts held that civil rights claims could not be pursued against political parties or their officers for actions involving internal party affairs.

In opposition to the defendants' motion, the plaintiff relies on *Smith v. Allwright,* 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); and *Redfearn v. Delaware Republican State Committee,* 362 F.Supp. 65 (D.Del.1973), *rev'd on other grounds,* 502 F.2d 1123 (3d Cir.1974), *on remand,* 393 F.Supp. 372 (D.Del.1975), *aff'd,* 524 F.2d 1403 (3d Cir.1975) (table), *judgment vacated by,* 429 U.S. 809, 97 S.Ct. 42, 50 Ed.2d 68 (1976). In these cases, the courts permitted civil rights actions to proceed on the basis that the state had sufficiently involved political parties in the operation of primary elections so that the conduct of the party could be considered state action.

To buttress his contention that there is similar involvement of the state in the instant case, the plaintiff cites certain provisions of the Pennsylvania Election Code which define a political party and provide a role for political parties in the conduct of state primary elections; specifically, 25 P.S. § 2831(a) (Purdon Supp. 1993–94), 25 P.S. § 2831(c) (Purdon 1963), 25 P.S. § 2832 (Purdon 1963), 25 P.S. § 2834 (Purdon Supp. 1993–94), 25 P.S. § 2839.1 (Purdon Supp. 1993–94), 25 P.S. § 2840 (Purdon 1963), 25 P.S. § 2841 (Purdon 1963), 25 P.S. § 2861 (Purdon 1963), 25 P.S. § 2872.1 (Purdon Supp. 1993–94), and 25 P.S. § 2911 (Purdon & Purdon Supp. 1993–94).

As the cases cited by the plaintiff indicate, there may be situations in which a political party may be found to be engaging in state action. Unfortunately for the plaintiff, those situations have for the most part involved primary elections. The Supreme Court has concluded that state action is present in those cases because the state had delegated

---

enforces certain rules of the State Committee, (opposition brief at p. 1), but Bloomingdale testified that no particular rule was involved. Rather, the decision was based on two reasons. First, there would not be enough space for all the candidates and all their literature if the independent literature was not excluded. Second, it was a matter of custom. A candidate has never been allowed to bring anything but his own literature; the purpose of the meeting is to endorse a candidate so the candidate's views are important, not that of a third party.

the running of the primary to political parties. Thus, as in *Smith,* if the party unconstitutionally prohibits blacks from voting in the primary, or if, as in *Terry,* the state permits the party to operate a shadow primary which excludes black voters prior to the state sanctioned primary, a civil rights violation will be found. In *Redfearn,* there was a slight variation. There was no primary election, but the court found state action because in lieu of a primary the party was conducting a convention to select the party's candidates for office. The civil rights violation lay in selecting the delegates to the convention in violation of the Supreme Court's one man, one vote rule.

Another case cited by the plaintiff, *Tiryak v. Jordan,* 472 F.Supp. 822 (E.D.Pa.1979), did not directly involve an election but is easily distinguishable. In that case, the court allowed a civil rights action to proceed against two party members after they had assaulted the plaintiff at a polling place on election day. In accord with state law, the party had designated the two defendants as poll watchers, which entitled them to present at the polling place the entire day. Hence, the assault had been made possible because of authority conferred on them by state law to be at the polling place.

■ The instant case is different because we deal only with a meeting of Democrats from around the Commonwealth to decide which Democratic candidates in the primary election will be endorsed by the state Democratic party. This meeting will not determine which candidates may appear on the primary ballot. Any Democrat can be listed on the ballot as long as he meets the requirements imposed by state law, *see* section 2872.1, *supra.* Further, if that candidate wins the primary, he will be the Democratic nominee in the general election, regardless of which candidate was endorsed by the party. Thus, we deal here purely with internal matters of the Pennsylvania Democratic party, which are in fact, conversely to the plaintiff's position, entitled to constitutional protection based on the associational rights of members of the party to designate the candidates they want to represent it in the races for public office. As noted in *Lynch v. Torquato,* 343 F.2d 370 (3d Cir.1965), the conduct of party leaders involving the internal affairs of the party is not state action.

A brief examination of the appellate decision in *Kay, supra,* supports our conclusion. In *Kay,* the plaintiff filed a civil rights suit after he was denied the right to speak at a presidential candidates forum sponsored by the state Democratic party, contending that his right to free speech and to association had been violated. The First Circuit affirmed the district court's dismissal of the complaint, stating that first amendment rights were only guaranteed against abridgment by the state and that in holding the forum the party was not engaged in governmental activity. It distinguished *Terry* and *Smith* because those cases involved the party in primary elections. The court also stated:

> Moreover, any attempt to characterize the candidates' forum as a governmental activity subject to constitutional restrictions or to establish an exception to the general rule that the First Amendment does not protect against private action would confront recent precedent protecting the First Amendment freedoms of political parties against infringement by the state. *See, e.g., Democratic Party of United States v. Wisconsin,* 450 U.S. 107, 122, 101 S.Ct. 1010, 1019, 67 L.Ed.2d 82 (1981) ("[T]he freedom to associate for the 'common advancement of political beliefs' ... necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." (Citation omitted.)) This precedent indicates that, at least in the absence of a compelling reason, we must not, in the words of the district court, "interfer[e] with a party determination as to the choice of speakers who are to address any of its meetings."

821 F.2d at 33 (footnote omitted).

The other cases cited by the defendants are similarly supportive of our conclusion. *See Koczak* (no infringement of constitutional rights when the plaintiff candidate was not invited to a candidates' debate by the New Hampshire Democratic party since no governmental action was involved); *McIntosh* (Republican party did not violate the plain-

tiff's civil rights by refusing to allow him to speak at a party fund raising luncheon since no state action was involved); *McMenamin* (no state action when a party officer secretly moved the site of an election for party ward leader to defeat the plaintiff's election since the case involved purely internal party matters).

The plaintiff attempts to distinguish *Kay* and *McIntosh* because these cases did not involve an endorsement meeting. According to the plaintiff, an endorsement meeting "goes to the public function" of a political party, (plaintiff's memorandum in support of plaintiff's answer to the defendant's motion to dismiss at p. 13), while the activities in *Kay* and *McIntosh* are pointed more toward the party's internal affairs.

This argument is connected to the plaintiff's contention that we should extend constitutional protection to candidates because the candidate endorsed by the party is given, for all practical purposes, a significant advantage over the other candidates. Valenti implies that the endorsed candidate has a better chance of winning the primary and this is such a significant impact on the general election that we should apply constitutional guarantees to the party; specifically, forbid it from limiting the literature a candidate can dispense at an endorsement meeting.

There is some support in the case law for this position. In *Smith,* part of the Supreme Court's reasoning in deciding that primary elections were covered by the constitution was that when the state limited the choices in the general election to those who won in the primary, it was endorsing whatever unconstitutional conduct might have limited the party's field of candidates in the primary. 321 U.S. at 664, 64 S.Ct. at 765, 88 L.Ed. at 997. The plaintiff's argument would push this reasoning only one step back in the process to the stage where one candidate obtains the endorsement of the party. Assuming the presence of unconstitutional conduct which affects the party members' choice of an endorsed candidate, the primary is affected and in turn the general election.

We reject the plaintiff's position. As we have noted, regardless of who becomes the endorsed candidate, the plaintiff remains on the ballot and can campaign to win the primary. This type of indirect influence on the election is too remote to justify imposing limitations on the party's right to conduct its internal affairs. Moreover, and most significantly, it does not arise from any state action, such as the state's delegation of authority in the primary election cases. Rather, any practical advantages the endorsed candidate may have originates in the right of individuals to associate for common ends, a right we must respect, not infringe upon.

The plaintiff's argument that the practical advantages conferred on an endorsed candidate require us to recognize his civil rights claim is similar to the argument made by the plaintiffs in *Blank v. Heineman,* 771 F.Supp. 1013 (D.Neb.1991). In *Heineman,* two officers of a county Republican party were removed from office by the party's state executive committee. The county officers filed a civil rights complaint, alleging that they had been removed because they were evangelical christians. As the plaintiff in the instant case argues, they also contended that the complaint should proceed because of an indirect effect of the defendant's conduct on the primary and general elections. As discussed by the court:

> In this case, plaintiffs argued at hearing that if the defendants are not prevented from removing them from their positions based on the plaintiffs' religious beliefs, ultimately primary and general elections will be affected. The plaintiffs reason that there will be a lack of candidates with certain religious beliefs progressing from lower levels within the Republican party itself to positions in electoral races. The plaintiffs therefore attempt to transform the internal affairs of the Republican party in this case into activity affecting primary and general elections that would constitute state action.

> The Court finds plaintiffs' argument which attempts to "bootstrap" and transform actions relating solely to the internal activity of a political party into activity which constitutes state action to be unpersuasive. Simply stated, the plaintiffs' argument, carried to its logical extension, would transform any action of a political

party involving internal affairs into state action. Courts generally and consistently have been reluctant to interfere with the internal operations of a political party. [citations omitted].

*Id.* at 1018 (brackets added).

Significantly, in reaching this conclusion the court relied on *Lynch, supra.*

We must therefore dismiss the plaintiff's complaint. Because of the lack of state action, he can prove no set of facts in support of his claims which would entitle him to relief. *See Labov v. Lalley,* 809 F.2d 220 (3d Cir.1987).[2]

We accordingly do not decide the plaintiff's motion for a preliminary injunction and that motion will be dismissed as moot.[3] We do note here, however, that any limitation imposed by the State Committee on the plaintiff appears to be relatively minor. The plaintiff may run on the primary ballot. He is not barred from the endorsement meeting. He is free to express his positions on various campaign issues at that meeting. He may base those positions on the writings of Lyndon LaRouche and refer to or quote LaRouche in his presentations or in his own campaign literature. The only thing he may not do is distribute literature which was prepared by or for LaRouche or others, independently of plaintiff's campaign. The plaintiff's attempt to obtain the endorsement of the party should not therefore be materially affected.

We will issue an appropriate order.

### ORDER

AND NOW, this 2nd day of February, 1994, it is ordered that:

1. The defendants' motion to dismiss the complaint is granted and this action is hereby dismissed.

2. The plaintiff's motion for a preliminary injunction is dismissed as moot.

3. The Clerk of Court shall close this file.

See *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980).

---

2. We also note that, as argued by the defendants, other cases cited by the plaintiff, *Lugar v. Edmondson Oil Co. Inc,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), and *Amalgamated Food Employees v. Logan Valley Plaza, Inc.,* 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968), are factually distinguishable. Further, *Logan Valley* was overruled by *Hudgens v. NLRB,* 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976).

3. In any event, based on the foregoing, the plaintiff could not show a likelihood of success on the merits, a requisite for preliminary injunctive relief. *See Hohe v. Casey,* 868 F.2d 69 (3d Cir. 1989).