Millie MAX, Appellant

v.

REPUBLICAN COMMITTEE OF LAN-CASTER COUNTY; David M. Dumeyer, In his Official Capacity as Chairman of the Republican Committee of Lancaster County; Andrew Heath; Lancaster County Republican Headquarters, a nonprofit corporation.

No. 08–4158.

United States Court of Appeals, Third Circuit.

Argued Oct. 28, 2009.

Filed Nov. 13, 2009.

Paul A. Rossi, (Argued), Mountville, PA, Attorney for Appellant.

Robert M. Frankhouser, Jr., Kevin M. French, (Argued), Hartman, Underhill & Brubaker LLP, Lancaster, PA, Attorneys for Appellees.

Mark D. Schwartz, Bryn Mawr, PA, Attorney for Amicus Democracy Rising PA.

Before: SLOVITER, FUENTES, and HARDIMAN, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Millie Max appeals the District Court's order granting the motion to dismiss filed by defendants, the Republican Committee of Lancaster County ("RCLC"), the Lancaster County Republican Headquarters ("LCRH") (a nonprofit corporation controlled by the RCLC), David M. Dumeyer (the chairman of the RCLC), and Andrew Heath (an employee and executive director of the RCLC) (collectively, "defendants"). Max alleges that defendants infringed upon her First Amendment rights of free speech and expression during a primary election campaign for judgeships on the Lancaster County Court of Common Pleas. She filed this action under 42 U.S.C. § 1983.[1]

## I.

Max was an elected committeewoman for the RCLC. The RCLC is a political committee organized under the laws of the Commonwealth of Pennsylvania. As such, the RCLC is entitled to nominate candidates at primaries for inclusion on the general election ballot, which it does by a vote of the party electors. See 25 P.S. § 2862. The registered Republican voters of Lancaster County comprise the electors in the primary for Common Pleas judgeships. Id. § 2832.

## II.

Max's amended complaint contains five counts, all of which allege that defendants retaliated against Max in violation of the First Amendment because she criticized two of the party's endorsed candidates and instead supported an unendorsed candidate. It appears that the RCLC regarded Max as a wayward Republican committeewoman because she was unwilling to support the endorsed candidates and openly lobbied against them.

Max alleges that in or about May 2007, Heath heard that someone was campaigning door-to-door against endorsed candidates. Heath asked Max if she knew who it was and said that he was tracing the suspect's license plate number. When Max admitted that she was the individual he sought, Heath threatened to "convene a meeting after the election" at which Max "understood that she would likely be asked to resign her elected position." App. at 107. Defendants then "instructed certain poll workers to observe and report back to Defendants on [Max's] ... political speech and campaign efforts." App. at 99. After the primary election, Dumeyer wrote a letter to Max in which he warned that campaigning against endorsed candidates was inappropriate for someone in her position, and that she should either refrain

---

1. The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), and this court has jurisdiction under 28 U.S.C. § 1291.

from further doing so or should resign.[2] Max's counsel conceded at oral argument that, under the applicable bylaws, defendants could not have removed Max from her committeewoman position because of her conduct.

Defendants filed a motion under Fed. R.Civ.P. 12(b)(6) to dismiss the amended complaint, which the District Court granted. Max's appeal of that order is before us.

■ We review de novo a district court's dismissal of an action pursuant to Rule 12(b)(6). *Rodriguez v. Our Lady of Lourdes Med. Ctr.*, 552 F.3d 297, 302 (3d Cir.2008). In deciding a motion to dismiss, courts generally must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

### III.

■ It is axiomatic that the First Amendment governs only state action, not the actions of private entities. As a threshold matter, therefore, we must determine whether defendants are state actors.[3] This determination requires a fact-based analysis of the particulars of each case. *See Benn*, 371 F.3d at 171 (observing that the Supreme Court has noted that the criteria for determining whether state action is present "lack rigid simplicity").

■ The thrust of Max's argument is that defendants are state actors under § 1983 because the Commonwealth of Pennsylvania has delegated to the Republican party the authority to decide "who will appear on the Commonwealth's general election ballot." Appellant's Br. at 9. She contends that this power is traditionally exclusive to state actors. Max is correct that state action may be imputed to private groups who carry out functions that are "governmental in nature." *Evans v. Newton*, 382 U.S. 296, 299, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) (establishing the "public function" test for state action). However, her contention is unavailing.

■ As defendants note, Max conflates the role of the RCLC with that of the electorate. That is, she argues that the RCLC, a designated political committee, performs the traditionally public function of choosing candidates for the general election but in fact Pennsylvania delegates such authority to the *registered voters* of the Republican Party. Max's premise fails to distinguish between the RCLC, which

---

**2.** She alleges that as a result of defendants' actions she suffered a stigma and censored her own speech. She states that as a result of defendants' letter, she "must weigh and nicely balance every word," and "has a legitimate fear that such information may be used to defeat her in a future primary election campaign for her committee position." Appellant's Br. at 28.

**3.** We note that "[i]n cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 170 n. 1 (3d Cir.2004) (quoting *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982)).

endorses candidates in the primary, and the corpus of registered Republican voters who, by voting in the primary election, actually select the nominees for the general election. *See* 25 P.S. §§ 2831, 2812.

An RCLC endorsement does not necessarily guarantee a place on the general election ballot. If it did, Max would have no reason to campaign for her unendorsed candidate and criticize the two endorsed candidates. Rather, an RCLC endorsement is no more than an advantage, albeit often a substantial one, to those seeking to compete in a general election. Thus, it is the registered Republican voters of Lancaster County, not defendants, to whom Pennsylvania has delegated authority to perform the public function of selecting the Republican candidates to be placed on the ballot for the general election.

Moreover, the principal cases upon which Max relies are distinguishable from the one at hand. For instance, Max's blanket assertion—that political parties are state actors during primary elections—derives from two Supreme Court cases from the Jim Crow era. These cases, *Smith v. Allwright,* 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944), and *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953), involved two attempts by the Democratic Party of Texas to bar African–Americans from participating in primary elections. In both instances, the Supreme Court sustained the claims under § 1983 because Texas left it up to private groups, i.e. political parties, to decide who could vote so as to intentionally circumvent the Fifteenth Amendment. *See Terry,* 345 U.S. at 466, 73 S.Ct. 809 ("the ... right to be free from racial discrimination in voting 'is not to be nullified by a state through casting its electoral process in a form which permits a private organization to practice racial discrimination ....'" (quoting *Smith,* 321 U.S. at 664, 64 S.Ct. 757)).

There are at least two reasons why those decisions are inapposite. First, whereas Texas and the Democratic Party were working in concert to deny African–American participation in primaries, nothing in the record here suggests that Pennsylvania delegated authority to defendants with the intention of violating the constitutional rights of Max or anyone else. Max cannot plausibly assert that "the fingerprints of the state" are on the alleged infringement of her rights. *Leshko v. Servis,* 423 F.3d 337, 340 (3d Cir.2005).

Second, *Smith* and *Terry* involved attempts by a political party to violate the rights of persons who were not associated with the party. The instant case involves an alleged attempt by a political party to violate the rights of a party member. This distinction is key. In several decisions, the courts have expressly declined to interfere in the internal affairs of political parties. Indeed, in some cases the First Amendment has been cited as the basis for prohibiting such judicial meddling. For example, in *New York State Board of Elections v. Lopez Torres,* 552 U.S. 196, 128 S.Ct. 791, 797, 169 L.Ed.2d 665 (2008), the Supreme Court stated that "[a] political party has a First Amendment right to limit its membership as it wishes, and to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform."

Max relies on *Lynch v. Torquato,* 343 F.2d 370 (3d Cir.1965), to buttress her contentions, but that decision is inapt. In *Lynch,* although we noted that political parties could be state actors during primaries, we did not reach that question because we held that there had been no violation of the plaintiff's constitutional rights. *See id.* at 373 ("this lawsuit appears to be an effort ... to wrest control of ordinary party affairs from present leadership rather than an attempt to vindi-

cate the plaintiffs' [constitutional] right[s]. . . .").

Max cites the language in *Valenti v. Pennsylvania Democratic State Committee*, 844 F.Supp. 1015, 1019 (M.D.Pa.1994), where the court commented that in *Smith* the Supreme Court reasoned that by limiting general election choices to those candidates who prevail in the primary, the state "endors[es] whatever unconstitutional conduct might have limited the party's field of candidates in the primary." However, in *Valenti* the court held that political parties may suppress political speech from party members during their internal endorsement process. *Id.* at 1017–19.

Other decisions have also declined to elevate internal party issues to a constitutional level. In *Blank v. Heineman*, 771 F.Supp. 1013, 1014–15 (D.Neb.1991), the court rejected the claims of plaintiffs who sued the Executive Committee of the Republican Party under § 1983 alleging they were removed from their elected positions within the party because they were evangelical Christians. The plaintiffs asserted that their removal was state action because "ultimately primary and general elections [would] be affected." *Id.* at 1018. The court characterized the plaintiffs' theory as an "attempt[ ] to 'bootstrap' and transform actions relating solely to the internal activity of a political party into activity which constitutes state action. . . ." *Id.* The court dismissed the case, stating that "the plaintiffs' argument, carried to its logical extension, would transform *any* action of a political party involving internal affairs into state action." *Id.*

Such reasoning is persuasive here. Max asserts that defendants "engaged in state action when they sought to exclude and limit [Max's] unwanted political speech during the 2007 primary election in order to manipulate and influence who was placed on the Commonwealth's 2007 general-

al election ballot . . . ." Appellant's Br. at 21. The District Court rejected this argument, stating that:

> Defendants [sic] actions toward Plaintiff were not state actions that would subject Defendants to Section 1983 claims. Defendants' actions were internal to the party and are permissible by statute of the Commonwealth of Pennsylvania, 25 P.S. § 2837, and by the First and Fourteenth Amendments of the United States Constitution. Plaintiff is correct that the RCLC has a role as a state actor in primary elections, . . . but that does not make all of RCLC's actions state actions, as Plaintiff contends.

App. at 14. We agree.

Max next argues that Heath's threat to trace a license plate constituted state action because the power to trace a license plate is exclusive to the state. Even accepting that assertion, there is no allegation that Heath or any other defendant actually employed the machinery of the state to trace Max's license plate number. As Max concedes, Heath's threat was a bluff meant to induce her into admitting that she had campaigned against the RCLC's endorsed candidates. Tracing a license plate number may be state action as a "public function," but bluster about doing so is not.

Finally, Max claims that encouraging poll-workers to observe and report on her behavior on the day of the primary election constituted state action under *Tiryak v. Jordan*, 472 F.Supp. 822, 824 (E.D.Pa. 1979). There, the court stated that if the unconstitutional conduct of an officially certified poll-watcher was "made possible by state election law, and if one sequela of their conduct is to further the purity of an exclusive state concern, i.e. elections, then their actions are for § 1983 purposes properly attributable to the state." *Id.*

Even if we accept the premise that poll-workers are state actors while guarding the integrity of an election, the defendants here, unlike those in *Tiryak*, are not the poll-watchers. Defendants here are private parties. Although a private party can be liable under § 1983 if he or she willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right, *see Abbott v. Latshaw*, 164 F.3d 141, 147–48 (3d Cir.1998), this is not such a case. Max alleges that defendants "instructed certain poll workers to observe and report back to Defendants on Plaintiff's 2007 primary election day political speech and campaign efforts" and "certain poll workers did, in fact, observe and report back to Defendants...." App. at 99. At most, defendants used the poll-workers to obtain information. This is not the same as conspiring to violate Max's First Amendment rights.

### IV.

Although there may well be situations where the actions of a political party in a primary election are deemed to be state action, defendants' alleged actions do not present such a situation. For the reasons set forth, we will affirm the District Court's order dismissing Max's First Amendment claim.