**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-4315

CATHERINE A. SPYRIDAKIS,
                              Appellant

v.

THE RIESLING GROUP, INC.,
d/b/a CE Credits Online

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. 2:09-cv-01545-WY)
District Judge: Honorable William H. Yohn

Submitted Under Third Circuit LAR 34.1(a)
July 16, 2010
Before:    FUENTES and VANASKIE, Circuit Judges,
and DITTER,* Senior District Judge

(Filed: October 1, 2010)

OPINION OF THE COURT

VANASKIE, Circuit Judge.

---

*Honorable J. William Ditter, Jr., Senior District Judge for the United States
District Court for the Eastern District of Pennsylvania, sitting by designation.

In this case of alleged violations of sections 5 and 10 of Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 Pa. Stat. §§ 260.5 and 260.10, and wrongful termination, Catherine Spyridakis appeals the order of the District Court granting the motion to dismiss filed by The Riesling Group, doing business as CE Credits Online ("CEC"). For the reasons that follow, we will affirm.

I.

As we write only for the parties, who are familiar with the facts and procedural history of this case, we will set forth only those facts necessary to our analysis. CEC retained Spyridakis as a part-time online teaching assistant in June of 2004. Spyridakis signed an Agreement and Fee Schedule providing, among other things, that she was an independent contractor, that she agreed to CEC's guidelines concerning her work, invoicing, and compensation, and that either party could terminate the agreement at will.

After performing her job duties for some time, Spyridakis came to believe that CEC exercised enough control over her work that she was truly an employee, not an independent contractor. Seeking clarification of her employment status for tax purposes, Spyridakis described her work to the Pennsylvania Department of Labor and Industry, Office of Unemployment Compensation Tax Services, Bureau of Employer Tax Operations ("Tax Bureau"). In the course of its subsequent investigation, the Tax Bureau contacted CEC around July or early August of 2006. CEC terminated Spyridakis on August 11, 2006. CEC also withheld payment on Spyridakis's final two invoices for

more than five months.

Soon after Spyridakis's termination, the Tax Bureau determined that she had been an employee, not an independent contractor. Spyridakis then applied for and received unemployment benefits. CEC appealed the award of unemployment compensation on the ground that Spyridakis had been an independent contractor who was ineligible for benefits. Three separate administrative bodies agreed, however, that Spyridakis was an employee. First, the Pennsylvania Department of Labor and Industry, Bureau of Unemployment Compensation Benefits and Allowances ("Benefits Bureau") found that Spyridakis was an employee eligible for benefits. Second, a Department of Labor and Industry Referee affirmed the Benefits Bureau's decision. Third, the Unemployment Compensation Board of Review ("Board") affirmed the Referee's decision.

CEC appealed the Board's decision to the Commonwealth Court of Pennsylvania. Spyridakis participated in the proceedings before the Commonwealth Court as an intervenor. She was represented by counsel, who submitted a brief in support of affirmance of the Board's determination that Spyridakis was an employee. The Commonwealth Court, observing that the extensive record included more than 300 pages of documents offered by Spyridakis and the testimony from two hearings, concluded that the Board's finding was wrong and reversed the award of unemployment benefits. C E Credits Online v. Unemployment Comp. Bd. of Review, 946 A.2d 1162, 1164-65, 1170 (Pa. Commw. 2008). Spyridakis, through counsel, filed a petition for allowance of appeal

3

to the Pennsylvania Supreme Court, which was denied. C E Credits Online v.

Unemployment Comp. Bd. of Review, 971 A.2d 493 (Pa. 2009).

Following the Commonwealth Court's ruling, Spyridakis brought this action. Her

complaint, filed in the Philadelphia Court of Common Pleas, contained four counts: (1)

wrongful discharge in violation of public policy, (2) breach of contractual duty of good

faith and fair dealing, (3) violations of the WPCL, 43 Pa. Stat. §§ 260.5 and 260.10, and

(4) breach of contract arising from unpaid invoices for services rendered. CEC removed

the action to the United States District Court for the Eastern District of Pennsylvania on

the basis of diversity of citizenship and subsequently moved to dismiss. The District

Court, finding that the Pennsylvania Commonwealth Court's determination that

Spyridakis was not an employee of CEC was entitled to preclusive effect, dismissed the

WPCL claim as that legislation applies only to employees. Spyridakis v. Riesling Group,

Inc., Civil Action No. 09-1545, 2009 WL 3209478, at *7 (E.D. Pa. Oct. 6, 2009).

Finding that the termination of the agreement did not violate public policy, the District

Court dismissed the claims of wrongful discharge and breach of the covenant of good

faith and fair dealing. Finally, the District Court exercised its discretion under 28 U.S.C.

§ 1367(c)(3) not to exert supplemental jurisdiction over the breach of contract claim for

unpaid invoices, remanding the claim to the Philadelphia Court of Common Pleas.

Spyridakis, 2009 WL 3209478, at *13.

II.

4

We have jurisdiction over the District Court's dismissal order pursuant to 28 U.S.C. § 1291. See Hudson United Bank v. LiTenda Mortg. Corp., 142 F.3d 151, 155 (3d Cir. 1998) ("[A] dismissal order preceding a § 1367(c) remand order is reviewable by direct appeal pursuant to 28 U.S.C. § 1291.") (citation omitted). We exercise plenary review over the District Court's application of issue preclusion. See Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 248 (3d Cir. 2006). We also review de novo the District Court's dismissal of Spyridakis's claims under Rule 12(b)(6). See Max v. Republican Comm. of Lancaster County, 587 F.3d 198, 200 (3d Cir. 2009). We accept Spyridakis's factual allegations as true and draw all reasonable inferences in her favor. See id.

A.

Federal law provides that state court judgments "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. This statute "directs federal courts considering the preclusive effect of another jurisdiction's prior judgment to look not to federal preclusion law or practice but to what the other jurisdiction would decide regarding its preclusive effect." Del. River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 573 (3d Cir. 2002). Accordingly, we look to Pennsylvania law to assess the preclusive effect of the Commonwealth Court's judgment.

5

In Pennsylvania, issue preclusion applies if:

(1) the issue decided in the prior case is identical to the one presented in the later action;
(2) there was a final adjudication on the merits;
(3) the party against whom the plea is asserted was a party or in privity with a party in the prior case;
(4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and
(5) the determination in the prior proceeding was essential to the judgment.

Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 50-51 (Pa. 2005).

The District Court found that each of these factors was satisfied in this case. We agree. At issue in the unemployment compensation proceeding and central to the WPCL claims asserted in this matter is whether Spyridakis was an employee of CEC. There was a final adjudication of this issue in the state court proceedings, Spyridakis was a party in the state court matter, there was a full opportunity to litigate the issue, and the determination of whether Spyridakis was an employee or an independent contractor was essential to the state court judgment.

Spyridakis argues that issue preclusion should not apply because she did not have "a full and fair opportunity to litigate" her employment status in the unemployment compensation proceedings. She relies on Rue v. K-Mart Corp., 713 A.2d 82 (Pa. 1998), to support her assertion that decisions arising from unemployment compensation proceedings do not have a preclusive effect in subsequent cases.

In Rue, the Pennsylvania Supreme Court held that an unemployment compensation

6

referee's factual finding did not give rise to issue preclusion in the employee's subsequent defamation action against her employer. Id. at 86-87. The court emphasized the procedural differences between proceedings before a referee and those before a court of record. The court concluded that "[t]he substantial procedural and economic disparities between unemployment compensation proceedings and later civil proceedings negate the preclusive effect of a Referee's factual findings." Id.

As the District Court recognized, Rue is plainly distinguishable. The present case concerns the preclusive effect of a decision by a Pennsylvania court on a question of law, not a decision by an unemployment compensation referee on a question of fact. When she was before the Commonwealth Court, Spyridakis was represented by counsel, and the Commonwealth Court considered an extensive record. After an unfavorable decision in the Commonwealth Court, Spyridakis petitioned for review by the Pennsylvania Supreme Court. Moreover, unlike the employer in Rue, Spyridakis had every incentive to litigate her case vigorously in her unemployment compensation proceedings. These considerations support the District Court's conclusion that Spyridakis did, in fact, have a "full and fair opportunity to litigate" her employment status. See Magoni-Detwiler v. Pennsylvania, 502 F. Supp. 2d 468, 475-76 (E.D. Pa. 2007) (noting that representation by counsel, extensive briefing, presentation of evidence, and petition for review by the Pennsylvania Supreme Court compelled conclusion that plaintiff had received a full and fair opportunity to litigate her claim arising out of unemployment compensation

7

proceedings).

Spyridakis argues that the Commonwealth Court's appellate review of the administrative unemployment compensation proceedings does not support the application of issue preclusion. She cites Kelley v. TYK Refractories Co., 860 F.2d 1188 (3d Cir. 1988), to support this assertion. Kelley, however, did not hold that the standard of appellate review in unemployment compensation proceedings precludes an opportunity for a full and fair adjudication of the issue of law under consideration in the subsequent action. Instead, it referenced the reviewing court's deference to the administrative agency's findings of fact in concluding that a ruling adverse to the employee in the unemployment compensation proceedings was not entitled to preclusive effect in a subsequent case asserting race discrimination claims. Id. at 1197-98. Kelley turned on the fact that the questions of fact presented in the unemployment compensation proceedings were not identical to the factual issues presented in the subsequent civil rights action. Id. at 1195-96. By way of contrast, the issue of law in this case is identical to the question of law decided by the Commonwealth Court in the unemployment compensation proceedings. Therefore, Kelley does not support Spyridakis's position.

The WPCL applies only to employees, not to independent contractors. See Morin v. Brassington, 871 A.2d 844, 850 (Pa. Super. Ct. 2005). Because the Commonwealth Court's determination that Spyridakis was not an employee must be accorded preclusive effect, the District Court properly dismissed Spyridakis's WPCL claims.

B.

Next, we consider Spyridakis's claim for wrongful discharge in violation of public policy. As a preliminary matter, it is not apparent that Pennsylvania would recognize an independent contractor's claim for wrongful discharge. CEC points out that no Pennsylvania case has extended this cause of action to independent contractors, nor are we aware of any such case. Nonetheless, like the District Court, we will assume, without deciding, that Spyridakis could pursue a claim for wrongful discharge. We concur with the District Court's determination that Spyridakis has failed to identify a clear mandate of public policy that was undermined by CEC's alleged conduct.

In Pennsylvania, "as a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." Weaver v. Harpster, 975 A.2d 555, 562 (Pa. 2009). "Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy." Clay v. Advanced Computer Applications, Inc., 559 A.2d 917, 918 (Pa. 1989). To determine Pennsylvania public policy, courts look to the Commonwealth's "Constitution, court decisions, and statutes." Weaver, 975 A.2d at 563. We have previously observed that "Pennsylvania courts have construed the public policy exception to at-will employment narrowly, lest the exception swallow the general rule." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 111 (3d Cir. 2003).

In Fraser, we observed that, although the perimeters of the narrow public policy

9

exception have not been precisely defined, there appear to be "three limited circumstances in which public policy will trump employment at-will." Id. Quoting Hennessy v. Santiago, 708 A.2d 1269, 1273 (Pa. Super. Ct. 1998), we described those circumstances as follows:

> "[A]n employer (1) cannot require an employee to commit a crime [and fire the employee for refusing to do so], (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specifically prohibited from doing so by statute."

Fraser, 352 F.3d at 111. None of those circumstances is present here.

Spyridakis argues that CEC contravened public policy by terminating her employment for reporting to the government unlawful conduct, i.e., misclassifying her as an independent contractor when she was truly an employee. Even if we accept that Spyridakis was motivated by a desire to report conduct she deemed unlawful, she points to no authority that she was under a legal duty to do so. Moreover, as the District Court found in this case, Fraser precludes a wrongful discharge claim based upon a plaintiff reporting alleged wrongful or illegal activity. Fraser, 352 F.3d at 112 ("Pennsylvania courts 'have repeatedly rejected claims that a private employer [as opposed to a public employer] violated public policy by firing an employee for whistleblowing, when the employee was under no legal duty to report the acts at issue.'") (quoting Donahue v. Fed. Express Corp., 753 A.2d 238, 244 (Pa. Super. Ct. 2000)).

Spyridakis also argues that CEC violated Pennsylvania public policy by terminating her for attempting to determine CEC's and her own tax obligations. To

10

bolster her argument that the Commonwealth's public policy supports her right or duty to verify tax burdens, Spyridakis cites to statutes requiring employers to withhold income tax, 72 Pa. Cons. Stat. § 7316, and to contribute to the Pennsylvania unemployment compensation fund, 43 Pa. Cons. Stat. § 781(a)(1). These statutes, however, are silent with respect to an employee's rights or obligations and do not create a "clear mandate of public policy" that is relevant to Spyridakis's case. "Where the termination has not implicated a clear mandate of public policy, [Pennsylvania Courts] have not permitted a common law cause of action for wrongful discharge." Weaver, 975 A.2d at 564. Accordingly, Spyridakis's wrongful discharge claim on this ground fails as well.

For similar reasons, we must reject Spyridakis's argument that her termination implicates a third public policy, the "interests embodied in the tax and employment laws." (Appellant's Br. at 41.) Spyridakis cites to a section of the WPCL, 43 Pa. Cons. Stat. § 260.9a(a), a section of the unemployment compensation statute, 43 Pa. Cons. Stat. § 801, and a section of the workers' compensation statute, 77 Pa. Cons. Stat. § 431, to support this argument. She does not, however, explain how these statutes create a clear mandate of public policy that was implicated by her termination.

Therefore, we will affirm the District Court's dismissal of her wrongful termination claim. Moreover, because a plaintiff "cannot as a matter of law maintain an action for breach of the implied duty of good faith and fair dealing, insofar as the underlying claim is for termination of an at-will employment relationship," Donahue, 753

11

A.2d at 243 (Pa. Super. Ct. 2000), we will also affirm the dismissal of the claim for breach of the contractual duty of good faith and fair dealing.

III.

Having determined that the District Court properly dismissed Spyridakis's claims under the WPCL, for wrongful discharge, and breach of the duty of good faith, and finding no abuse of discretion in the decision to remand the remaining breach of contract claim, we will affirm the judgment of the District Court.